**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREIGHT INNOVATION LLC,**<br>***Plaintiff,*** | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-2559** |
| **FELLOWSHIP WAREHOUSING & LOGISTICS LLC, *et al.*,**<br>***Defendants.*** | : | |

**MEMORANDUM**

**KENNEY, J.** **AUGUST 21, 2026**

Before the Court are various Motions to Dismiss filed by Defendants Chaim Gross, Shani Gross, FoamTex LLC ("FoamTex"), SmartShip Network LLC ("SmartShipped"), Samuel Greenwald, Yaakov Landsman, and Simcha Newmark. *See* ECF Nos. 109, 110, 111, 115, 132. Plaintiff opposes dismissal as to each Defendant. *See* ECF Nos. 123, 136, 145. For the reasons set forth below, the Court decides the Motions as follows. The Court will **GRANT** Chaim Gross', Shani Gross', FoamTex's, and Simcha Newmark's Motions to Dismiss for lack of personal jurisdiction (ECF Nos. 109, 110, 111, 132), and will **DISMISS** all claims asserted against them **WITHOUT PREJUDICE** to Plaintiff refiling those claims in a court that can exercise personal jurisdiction over them. The Court will **GRANT** SmartShipped's, Samuel Greenwald's, and Yaakov Landsman's Motion to Dismiss for failure to state a claim (ECF No. 115), and **DISMISS** the claims asserted against them in the First Amended Complaint ("FAC"): Count III is **DISMISSED WITHOUT PREJUDICE** against Samuel Greenwald and Yaakov Landsman in light of Plaintiff's voluntary withdrawal of the claim; Count III is **DISMISSED WITH PREJUDICE** against SmartShipped; and Count IV is **DISMISSED WITH PREJUDICE** against

SmartShipped, Samuel Greenwald, and Yaakov Landsman. Finally, the Court will deny leave to amend as futile.

## I. BACKGROUND

### A. Factual Background

#### *1. The Shipping Services Agreement*

Plaintiff Freight Innovation LLC is "a freight and shipping transport company" that provides "shipping services to clients in order to streamline the time and costs associated with their freight shipments." ECF No. 78 ¶ 1. In June 2023, Plaintiff agreed to provide shipping services to Defendants FellowShip Warehousing & Logistics LLC ("FellowShip") and Milliard Enterprises LLC d/b/a Milliard Brands ("Milliard Enterprises") for a period of two years. *Id.* ¶¶ 20, 23. The terms and scope of the parties' contractual relationship were set out in a Contract Optimization Agreement (the "Agreement"). *Id.* ¶ 20.[1] On June 27, 2023, Jack Kressner, Director of Business Development, signed the Agreement as the "'authorized representative' on behalf of the 'Client,'" which was defined as "'FellowShip/Milliard.'" *Id.* ¶¶ 21, 25 (citation omitted). On June 29, 2023, Plaintiff's CEO, Stephen Nadel, countersigned the Agreement. *Id.* ¶ 25. The Agreement contained a Pennsylvania forum selection clause and further provided that it is "governed by the laws of the Commonwealth of Pennsylvania[,]" except for its choice of law rules. *Id.* ¶ 14; *see also* ECF No. 69-7 § 12.

[1] The Agreement was filed as part of the summary judgment record. *See* ECF No. 69-7. Since Plaintiff quotes from and cites to portions of the Agreement in its FAC, *see, e.g.*, ECF No. 78 ¶¶ 21–25, the Court finds that the Agreement is incorporated into the FAC by reference. *See OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (explaining that courts may consider "documents incorporated into the complaint by reference" when deciding a Rule 12(b)(6) motion to dismiss (internal quotations and citation omitted)).

Under the terms of the Agreement, Defendants FellowShip and Milliard Enterprises "engaged Plaintiff as their exclusive third-party consultant partner for parcel transportation services" and "agreed to pay Plaintiff 50% of their realized savings" from shipping costs "[i]n exchange for [Plaintiff's] services." ECF No. 78 ¶¶ 20, 24 (emphasis omitted). In order to calculate realized savings, the Agreement provided that "Plaintiff would obtain shipment information directly from the carrier(s), or that Defendants would provide to Plaintiff 'on a monthly basis, all carrier invoices covered by this Agreement.'" *Id.* ¶ 24 (quoting ECF No. 69-7 § 4(b)). Moreover, during the two-year period of the Agreement, FellowShip and Milliard Enterprises agreed not to use "'other 3rd party UPS or FedEx accounts'" and agreed that they "'would not simultaneously utilize or engage in a direct relationship with the same carrier offered by [Plaintiff] (example: UPS via FI and UPS direct) without prior consent.'" *Id.* ¶ 22 (quoting ECF No. 69-7 §§ 8, 16).

After executing the Agreement in June 2023, Milliard Enterprises provided Plaintiff with "copies of its existing FedEx agreements to review and advise upon, which were in the name of 'Milliard Brands.'" *Id.* ¶ 26. Defendant Samuel Greenwald, who was a "director" at Milliard Enterprises, "sent Plaintiff payment information." *Id.*; *see also id.* ¶ 68. Plaintiff provided its services in turn to FellowShip and Milliard Enterprises "in accordance with the Agreement," including providing them with access to Plaintiff's "valuable, proprietary rate information." *Id.* ¶ 27.

Over the course of "about two months, Plaintiff was paid a total of approximately $25,000" in exchange for its services. *Id.* ¶ 29. "The funds were paid by 'Milliard Brands.'" *Id.* But sometime after this initial payment, FellowShip and Milliard Enterprises "abruptly stopped responding to Plaintiff's communications" and "stopped making payments." *Id.* ¶¶ 29–30; *see*

*also id.* ¶ 32. FellowShip and Milliard Enterprises then allegedly "failed to provide access to their shipping information or copies of their monthly shipping invoices, as required" by the terms of the Agreement. *Id.* ¶ 30. FellowShip and Milliard Enterprises also "started using another UPS provider, hired other third-party consultants, and signed a deal with FedEx directly, cutting out Plaintiff." *Id.* ¶ 31. Plaintiff alleged that these actions constituted "blatant violations of the exclusivity provisions of the Agreement." *Id.*

On April 30, 2024, Plaintiff's counsel wrote a letter to Defendant Chaim Gross, the majority owner of both FellowShip and Milliard Enterprises, reminding FellowShip and Milliard Enterprises of their contractual obligation to provide Plaintiff with "(i) their contracts with FedEx and UPS, or (ii) copies of their other carrier and third-party contracts or proposals received from June 29, 2023 to the present." *Id.* ¶ 33. Neither Chaim Gross nor any of the other Defendants responded. *Id.*

***2. Other "Affiliated" Corporate Entities***

Based on representations made by FellowShip's and Milliard Enterprises' former counsel in this litigation, "Plaintiff initially believed . . . that the 'Milliard' party it had been dealing with was Defendant Milliard Enterprises LLC." *Id.* ¶ 37. However, when Plaintiff deposed Chaim Gross "in this action on March 20, 2026, he revealed for the first time" that Lakewood Candies LLC d/b/a Milliard Brands ("Lakewood Candies")—another entity that he owns—"was the 'Milliard Brands' with which Plaintiff had been dealing." *Id.* In addition to FellowShip, Milliard Enterprises, and Lakewood Candies, Chaim Gross has a majority ownership interest in Defendant FoamTex. *Id.* ¶ 38(a)–(d). Defendant Simcha Newmark has a minority ownership interest in FoamTex. *Id.* ¶ 38(c).

According to Plaintiff, Milliard Enterprises, Lakewood Candies, and FoamTex have all used "deceptively similar business names[,]" "sold the same products[,]" and have been "used interchangeably . . . while projecting the image of being a singular business called 'Milliard' or 'Milliard Brands.'" *Id.* ¶¶ 40, 49; *see also id.* ¶¶ 41–42. For example, "[r]epresentatives of Milliard [Enterprises], Lakewood Candies, and FoamTex held themselves out as representing 'Milliard' or 'Milliard Brands,' and used milliardbrands.com email addresses when communicating with third parties." *Id.* ¶ 43; *see also id.* ¶¶ 44–46 (alleging that Milliard Enterprises, Lakewood Candies, and FoamTex have all used "the same shared website," sold the same types of products "all under the same 'Milliard' name and logo[,]" and "used the same Amazon storefronts to market and sell their products online"); *id.* ¶ 50 ("FellowShip, Milliard [Enterprises], Lakewood Candies, and FoamTex have used the same set of shipping accounts and subaccounts held in the name of 'Milliard Brands,' 'Milliard,' or variations thereof, to ship their parcels"). FellowShip, Milliard Enterprises, Lakewood Candies, and FoamTex also allegedly regularly enter into contracts under "the name 'Milliard Brands' or 'Milliard,' without specifying the specific corporate entity that is the contracting party." *Id.* ¶ 47.

During his March 2026 deposition, Chaim Gross further represented that FellowShip and Milliard Enterprises have now "gone out of business," and that Lakewood Candies is currently "winding down its business." *Id.* ¶ 59. According to Plaintiff, "Defendants have methodically moved the business, assets, and employees of FellowShip, Milliard [Enterprises], and Lakewood Candies over to new corporate entities." *Id.* ¶ 60. One of those new entities is FoamTex, which allegedly is operating "under the 'Milliard Brands' name" and is "selling the same exact products that were formerly sold by Milliard [Enterprises] and Lakewood Candies." *Id.* ¶ 61. As to FellowShip, Plaintiff alleged that FellowShip "rebranded and continued to operate the same

business under a new name, SmartShipped." *Id.* ¶ 63. Defendant SmartShip Network LLC—i.e., SmartShipped—has two members, Defendants Yaakov Landsman and Samuel Greenwald, and "was formed on or about March 10, 2025." *Id.* ¶ 64. Both Landsman and Greenwald were former employees of Milliard Enterprises and/or Lakewood Candies. *Id.* ¶¶ 67–68.

**B. Procedural History**

As the parties are all too familiar, this case has a somewhat lengthy and contorted procedural history, and the instant Motions to Dismiss arise by means of an unusual posture. Plaintiff originally initiated this action against Defendants FellowShip and Milliard Enterprises in California state court on October 11, 2024 (the "California Action"). *Id.* ¶ 35. After litigating the case in California for several months, on April 25, 2025, Plaintiff, FellowShip, and Milliard Enterprises entered into a stipulation, in which the parties agreed that Plaintiff's claims in the California Action would be dismissed and refiled in a new action in the Eastern District of Pennsylvania due to a forum selection clause in the parties' Agreement. *Id.* ¶ 36. FellowShip and Milliard Enterprises thereby agreed to submit to the jurisdiction and venue of this Court. *Id.*

On May 20, 2025, Plaintiff refiled its action in the Eastern District of Pennsylvania. *See* ECF No. 1. Rather than moving to dismiss, on September 10, 2025, FellowShip and Milliard Enterprises filed their answers to the original Complaint. *See* ECF Nos. 19, 20. Thereafter, the parties proceeded to discovery, engaged in several months of written discovery, and took depositions. At one point, a motion to compel was filed and resolved. *See* ECF Nos. 39, 49. In addition, in the midst of discovery, FellowShip and Milliard Enterprises changed counsel, which necessitated an extension of the parties' case deadlines. *See* ECF Nos. 46, 51–52, 58–60.

After the close of discovery, Plaintiff filed a Motion for Partial Summary Judgment, and FellowShip and Milliard Enterprises filed a Motion for Summary Judgment. *See* ECF Nos. 69,

71. Based on the arguments and factual representations that FellowShip and Milliard Enterprises made in their Motion for Summary Judgment, it became clear to the Court that Lakewood Candies—which was a non-party at the time—played a central role in the parties' dispute and appeared to be a party in interest. *See* ECF No. 76 at 1 n.1. Moreover, there appeared to be factual information that should have been revealed to Plaintiff earlier during fact discovery, which was instead withheld or misrepresented. *See id.* The Court thus denied without prejudice the parties' Motions for Summary Judgment and granted Plaintiff leave to amend its Complaint, as Plaintiff had previously represented that it wanted to seek leave to amend. *See* ECF Nos. 76–77; *see also* ECF No. 62 at 4–7.

On May 11, 2026, Plaintiff filed its FAC. *See* ECF No. 78. Plaintiff named nine new Defendants, in addition to Does 1–10, and asserted four causes of action. *See id.* ¶¶ 76–106. First, Plaintiff asserted a claim for breach of contract against Defendants FellowShip, Milliard Enterprises, Lakewood Candies, FoamTex, and Chaim Gross. *Id.* ¶¶ 76–89. As part of this claim, Plaintiff alleged that Defendants Lakewood Candies, FoamTex, and Chaim Gross are liable for the actions of Defendants FellowShip and Milliard Enterprises under a theory of single enterprise liability. *Id.* ¶¶ 85–89. Second, in the alternative to its breach of contract claim, Plaintiff asserted a claim for unjust enrichment against Defendants FellowShip, Milliard Enterprises, Lakewood Candies, and FoamTex. *Id.* ¶¶ 90–95. Third, Plaintiff asserted a claim for a violation of the Pennsylvania Uniform Voidable Transactions Act ("PUVTA") against all Defendants. *Id.* ¶¶ 96–102. Fourth, Plaintiff asserted a claim for aiding and abetting against all Defendants. *Id.* ¶¶ 103–06. Plaintiff seeks damages, specific performance of the Agreement, a declaration that certain transfers of assets between Defendants are void, and an injunction enjoining Defendants from certain future asset transfers, among other relief. *See id.* at 16–17 (Prayer for Relief).

After the FAC was filed, Defendants FellowShip, Milliard Enterprises, and Lakewood Candies filed a joint Motion to Dismiss, which the Court granted in part and denied in part. *See* ECF Nos. 85, 94, 101. At present, there are five pending Motions to Dismiss before the Court that were filed over the course of June and July 2026:

- Chaim Gross moved to dismiss all claims asserted against him for lack of personal jurisdiction under Rule 12(b)(2), for improper venue under Rule 12(b)(3), and for failure to state a claim under Rule 12(b)(6). *See* ECF No. 109-1 at 7.

- Shani Gross moved to dismiss all claims asserted against her for lack of personal jurisdiction under Rule 12(b)(2), for improper venue under Rule 12(b)(3), and for failure to state a claim under Rule 12(b)(6). *See* ECF No. 110-1 at 6.

- FoamTex moved to dismiss all claims asserted against it for lack of personal jurisdiction under Rule 12(b)(2), for improper venue under Rule 12(b)(3), and for failure to state a claim under Rule 12(b)(6). *See* ECF No. 111-1 at 7.

- SmartShipped, Samuel Greenwald, and Yaakov Landsman moved to dismiss all claims asserted against them for failure to state a claim under Rule 12(b)(6). *See* ECF No. 115-1 at 6.

- Simcha Newmark moved to dismiss all claims asserted against him for lack of personal jurisdiction under Rule 12(b)(2), for improper venue under Rule 12(b)(3), for insufficiency of service of process under Rule 12(b)(5), and for failure to state a claim under Rule 12(b)(6). *See* ECF No. 132-1 at 6.

Due to the unusual posture that the Motions to Dismiss were filed in, the Court notes that a significant amount of discovery has already occurred in this case and a fuller record was available to Plaintiff when amending its Complaint.

On June 26, 2026, Plaintiff filed a Consolidated Opposition to the Motions to Dismiss filed by Chaim Gross, Shani Gross, and FoamTex. *See* ECF No. 123. In addition, Plaintiff filed an Opposition to SmartShipped's, Samuel Greenwald's, and Yaakov Landsman's Motion to Dismiss on July 6, 2026, *see* ECF No. 136, and filed an Opposition to Simcha Newmark's Motion to Dismiss on July 16, 2026. *See* ECF No. 145. SmartShipped, Greenwald, and Landsman filed a

Reply in Further Support of their Motion to Dismiss on July 8, 2026. *See* ECF No. 138. Accordingly, the Motions to Dismiss are ripe for consideration.

## II. LEGAL STANDARDS

### A. 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant can move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007); *see also Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (explaining that a plaintiff has "the burden to come forward with sufficient facts to establish that jurisdiction is proper" (internal quotations and citation omitted)). Since the Court did not hold an evidentiary hearing, Plaintiff "need only establish a prima facie case of personal jurisdiction" and is "entitled to have [its] allegations taken as true and all factual disputes drawn in [its] favor." *O'Connor*, 496 F.3d at 316 (internal quotations and citation omitted).

In addition, while Plaintiff does not bear a "heavy" burden, it must demonstrate "with reasonable particularity sufficient contacts between the defendant and the forum state" and "may not rely on the bare pleadings alone." *Stern v. Aracari Project*, No. 24-cv-1222, 2025 WL 899320, at *2 (E.D. Pa. Mar. 21, 2025) (internal quotations and citations omitted). Rather, Plaintiff "must respond with actual proofs, not mere allegations." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (internal quotations and citation omitted); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (explaining that a "plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper'" (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996))). Therefore, courts are allowed to "consider

extrinsic evidence when adjudicating a contest to personal jurisdiction." *Spring Pharms., LLC v. Retrophin, Inc.*, No. 18-cv-4553, 2019 WL 6769988, at *5 (E.D. Pa. Dec. 11, 2019) (citing *Patterson by Patterson*, 893 F.2d at 603–04).

**B. 12(b)(3)**

A defendant can move to dismiss claims against it for improper venue under Rule 12(b)(3). *See* Fed. R. Civ. P. 12(b)(3). 28 U.S.C. § 1391(b) provides that a civil action can be brought in three different venues. For example, a plaintiff can bring an action in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). In addition, a plaintiff can initiate a suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *Id.* § 1391(b)(2). Defendants "bear the burden of showing improper venue." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 725 (3d Cir. 1982). When evaluating a Rule 12(b)(3) motion, "a court must accept as true the allegations in the complaint, although both parties may submit affidavits in support of their positions." *MacKay v. Donovan*, 747 F. Supp. 2d 496, 502 (E.D. Pa. 2010). Multiple districts may be proper in which to litigate an action, so "[v]enue does not have to be the 'best forum' for the action." *Id.* (citation omitted). In addition, "a plaintiff's choice of venue is accorded deference, especially when that choice is plaintiff's home forum." *Id.* (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

**C. 12(b)(5)**

A district court may dismiss a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). It is Plaintiff's responsibility to have "the summons and complaint served within the time allowed by Rule 4(m)," *see* Fed. R. Civ. P. 4(c)(1), and a defendant can "object to the

plaintiff's failure to comply with the procedural requirements for proper service." *White v. Green*, No. 09-cv-1219, 2009 WL 3209647, at *1 (E.D. Pa. Oct. 6, 2009) (internal quotations and citation omitted), *aff'd*, 382 F. App'x 199 (3d Cir. 2010). When deciding a Rule 12(b)(5) motion, "the party making the service has the burden of demonstrating its validity when an objection to service is made." *Id.* (internal quotations and citation omitted). If "process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992).

**D. 12(b)(6)**

A Rule 12(b)(6) motion tests the sufficiency of a claim. When deciding a motion to dismiss for failure to state a claim, the Court must "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations and citation omitted). Conclusory allegations "are not entitled to the assumption of truth." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citation omitted). To survive a Rule 12(b)(6) motion, a plaintiff's well-pleaded complaint must state a "plausible entitlement to relief[,]" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 559 (2007). While a plaintiff is not required to plead "detailed factual allegations," Federal Rule of Civil Procedure 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Put another way, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of the

necessary element[s]" of the plaintiff's claims. *Connelly*, 809 F.3d at 789 (internal quotations and citation omitted); *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

When determining a Rule 12(b)(6) motion, district courts "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993)). Courts may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *OFI Asset Mgmt.*, 834 F.3d at 490 (internal quotations and citation omitted).

## III. DISCUSSION

### A. Personal Jurisdiction

The Court begins with Defendants Chaim Gross', Shani Gross', FoamTex's, and Simcha Newmark's Motions to Dismiss for lack of personal jurisdiction. Under Federal Rule of Civil Procedure 4(k), a district court exercises personal jurisdiction over an out-of-state defendant to the extent authorized by the law of the state "where it sits." *O'Connor*, 496 F.3d at 316 (citing Fed. R. Civ. P. 4(k)(1)(A)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Here, Pennsylvania's long arm statute applies and allows for personal jurisdiction over nonresidents "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b). Accordingly, the Court must determine whether it can exercise personal jurisdiction over Defendants Chaim Gross, Shani Gross,

FoamTex, and Simcha Newmark consistent with the Due Process Clause of the Fourteenth Amendment.

There are multiple means by which a plaintiff can make out a prima facie showing of personal jurisdiction over a defendant. A review of Plaintiff's FAC and the parties' briefing reveals that Plaintiff has thrown jurisdictional "spaghetti at the wall" with the "hop[e] that some of the mess will stick." *DLJ Mortg. Cap., Inc. v. Stevens*, 167 F.4th 632, 634 (3d Cir. 2026). Specifically, Plaintiff alleged in the FAC that this Court can exercise personal jurisdiction over Chaim Gross, Shani Gross, FoamTex, and Simcha Newmark under three different theories: (1) under a "closely related parties" theory; (2) as an alter ego of FellowShip and Milliard Enterprises; and (3) under a single enterprise theory. *See* ECF No. 78 ¶¶ 16–17. In addition, as to FoamTex only, Plaintiff alleged that this Court can exercise personal jurisdiction over FoamTex under a fourth theory: the traditional test for specific jurisdiction. *See id.* ¶ 16. The Court will wade into the morass of theories alleged by Plaintiff, which all fail for the reasons discussed in detail below.[2]

***1. General Jurisdiction***

To exercise general personal jurisdiction over a defendant, the defendant must have a "'continuous and systematic'" affiliation with the forum state so "as to render [it] essentially at home in the forum state." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires*

---

[2] The Agreement contains a provision indicating that it "shall be interpreted, enforced and governed by and under the laws of the Commonwealth of Pennsylvania, except regarding choice of law." ECF No. 69-7 § 12; *see also* ECF No. 78 ¶ 14. Throughout their briefing, the parties did not expressly dispute whether Pennsylvania state law applies, did not conduct a choice-of-law analysis, and primarily relied on Pennsylvania law to the extent the claims and jurisdictional theories alleged in the FAC involved substantive issues. The Court finds that the parties have "waived any objection to that choice of law by failing to make" any argument regarding it. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 776 n.16 (3d Cir. 2018); *see also Williams v. BASF Catalysts, LLC*, 765 F.3d 306, 316 (3d Cir. 2014) ("[P]arties may waive choice-of-law issues."). Accordingly, the Court need not conduct a choice-of-law analysis and will apply either federal or Pennsylvania law.

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For individual defendants, the "paradigm forum for the exercise of general jurisdiction" is their place of domicile. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924. "[F]or a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.*; *see also Daimler*, 571 U.S. at 137 (explaining that for "a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction" (internal quotations and citation omitted)). In the absence of general jurisdiction, a court can still exercise jurisdiction over an out-of-state defendant if the requirements of specific jurisdiction are satisfied or if a defendant has otherwise consented to the jurisdiction of the Court.

Here, as alleged in the FAC, Chaim Gross is domiciled in and is a citizen of New Jersey, *see* ECF No. 78 ¶¶ 4–7; Shani Gross is domiciled in and is a citizen of New Jersey, *see id.* ¶ 6; FoamTex is a New Jersey LLC with its principal place of business in New Jersey, *see id.* ¶ 7; and Simcha Newmark is domiciled in and is a citizen of New Jersey, *see id.* ¶ 7. The Court thus does not have general jurisdiction over any of these Defendants because they are not considered "at home" in Pennsylvania. *Daimler AG*, 571 U.S. at 127 (citation omitted).[3]

***2. Consent to Jurisdiction Through a Forum Selection Clause***

This case also involves a Pennsylvania forum selection clause. *See* ECF No. 78 ¶ 14; *see also* ECF No. 69-7 § 12. As a general matter, "there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *Burger*

[3] When foreign corporations register to do business in Pennsylvania, they effectively consent to general jurisdiction under Pennsylvania's statutory framework. *See* 15 Pa. Cons. Stat. § 411(a), (f); *see also* 42 Pa. Cons. Stat. § 5301(a)(2). The Supreme Court has found that Pennsylvania's statute "comport[s] with the Due Process Clause." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 128 (2023); *see also id.* at 134, 146. Here, Plaintiff did not argue that this provides a basis for the Court to exercise general jurisdiction over FoamTex, so the Court does not address it.

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (internal quotations and citation omitted). For instance, through forum selection clauses, parties often "stipulate in advance to submit controversies for resolution within a particular jurisdiction[,]" thereby consenting to the jurisdiction of that court. *Id.*; *see also Mallory*, 600 U.S. at 145 (explaining that "signing a contract with a forum selection clause" is an action that "can carry . . . profound consequences for personal jurisdiction").

Here, Plaintiff alleged that Defendants FellowShip and Milliard Enterprises consented to the jurisdiction of this Court when they signed the Agreement containing the Pennsylvania forum selection clause. *See* ECF No. 78 ¶ 14; *see also id.* ¶ 15 (alleging that Defendants FellowShip and Milliard Enterprises also consented to jurisdiction when they entered into a stipulation, in which they agreed to submit to jurisdiction in the Eastern District of Pennsylvania). Although Defendants Chaim Gross, Shani Gross, FoamTex, and Simcha Newmark did not sign the Agreement themselves, Plaintiff asserts that the forum selection clause should still be applied to these four Defendants on the basis that they are "closely related parties" to FellowShip and Milliard Enterprises. *See id.* ¶¶ 16–17; *see also* ECF No. 123 at 15–17.

"Federal law controls the question of whether to enforce a forum selection clause." *In re McGraw-Hill Glob. Educ. Holdings*, 909 F.3d 48, 58 (3d Cir. 2018). However, state law "typically governs . . . whether the clause applies to a non-signatory as a . . . closely related party[,]" though contracting parties "are generally free to specify which law governs a contract's interpretation, and may agree to modify the choice specified in the contract." *Id.* Here, the parties have applied federal law in analyzing whether Defendants constitute closely related parties, *see, e.g.*, ECF No. 109-1 at 14–15; ECF No. 110-1 at 10–11; ECF No. 111-1 at 18; ECF No. 123 at 15–17; ECF No.

132-1 at 14–15, so the Court "will therefore apply federal law" as well, in light of the parties' apparent "stipulation." *In re McGraw-Hill Glob. Educ. Holdings*, 909 F.3d at 58–59.

In the Third Circuit, there are "four substantive issues that bear on whether" a forum selection clause applies to and binds a non-signatory. *Id.* at 59. Here, the parties have not moved to transfer this action pursuant to 28 U.S.C. § 1404, so only three of the four elements are relevant to the Court's analysis. To determine whether non-signatories "are bound by the terms of [an] agreement[]" between signatories, courts analyze: (1) whether the non-signatories are either "intended third-party beneficiaries of the contract" or "closely related parties[;]" (2) whether "enforcement was foreseeable to the non-signator[ies;]" and (3) whether "the dispute itself . . . fall[s] within the scope of the forum selection clause." *Id.*; *see also Liberty Surplus Ins. Corp. v. AXA Ins. Co.*, 788 F. App'x 850, 853 (3d Cir. 2019) (listing the same three elements).

With respect to the first element, "[i]n determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties[,] and whether the non-signatory received a direct benefit from the agreement." *In re McGraw-Hill Glob. Educ. Holdings*, 909 F.3d at 63 (quoting *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015)). Courts have found a non-signatory to be closely related to a contractual dispute and bound by a forum selection clause in a "variety of situations." *See Synthes, Inc. v. Emerge Med., Inc.*, 887 F. Supp. 2d 598, 607 (E.D. Pa. 2012) (collecting cases). For example, the Third Circuit has held that a corporate entity that was "affiliated" with the entity that signed the agreement on its behalf, was "owned and controlled by" the same person as the signatory entity, and had "a close relationship to the agreement itself" qualified as a closely related party. *See Carlyle Inv. Mgmt. LLC*, 779 F.3d at 219 & n.3; *see also First Fin. Mgmt. Grp. v. Univ. Painters of Balt., Inc.*, No.

11-cv-5821, 2012 WL 1150131, at *3 (E.D. Pa. Apr. 5, 2012) ("Corporations owned and controlled by the party signing the contract containing the forum selection clause have been found to be bound by the clause."); *Synthes*, 887 F. Supp. 2d at 610 (explaining that "close business relationships between the signatories and non-signatories to the pertinent agreements, together with the fact that the dispute among the parties centered on the interpretation of the agreements" supported binding the non-signatories). In addition, forum selection clauses have been enforced "against non-signatories where their actions and interests are inextricably intertwined with the contract dispute underlying [the] case." *Mackler v. SME, Inc. USA*, No. 23-cv-4353, 2024 WL 3729872, at *7 (E.D. Pa. Aug. 8, 2024) (internal quotations and citation omitted); *see also Meridian Bank v. Sandy Spring Bank*, No. 22-cv-3951, 2023 WL 8258769, at *5 (E.D. Pa. Nov. 29, 2023) (finding that co-conspirators who were acting against the interests of the plaintiff were closely related to the employment agreements at issue). Accordingly, "courts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Synthes*, 887 F. Supp. 2d at 607.

With respect to the second element, foreseeability is another "prerequisite to applying the closely related parties doctrine." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d at 64. "[B]efore binding a non-signatory as a closely related party," courts "require a finding that enforcement of the clause by or against the non-signatory would be foreseeable." *Id.* (collecting cases). As articulated by the Third Circuit, a finding of foreseeability "must have some evidentiary basis, other than pure speculation, that the party sought to be bound had an awareness of the clause, its contents, and that it might be defensively invoked." *Id.* at 65. However, the forum selection

clause and its contents do not need to have been "reasonably communicated to the party against whom enforcement is sought." *Id.* (internal quotations and citation omitted). Instead, foreseeability can be found as long as "there [is] some evidentiary basis for such a finding." *Id.*; *see also JMJS, Inc. v. Idzi*, No. 22-cv-1514, 2023 WL 6260121, at *4 (W.D. Pa. Sept. 26, 2023) ("The application of this principle turns on whether the third party should have foreseen that it could become embroiled in the contractual dispute between the signatories and be bound by their agreement.").

With respect to the third element, courts evaluate whether the claims asserted against the defendants "fall within the scope of the forum selection clause." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d at 59. "Whether or not a forum selection clause applies depends on what the specific clause at issue says." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997). Accordingly, determining the scope of the forum selection clause at issue requires a court to examine the language of the clause. *See id.*

With this framework in mind, the Court turns to evaluating whether the Pennsylvania forum selection clause can be applied to Defendants Chaim Gross, Shani Gross, Simcha Newmark, and FoamTex pursuant to the closely related parties doctrine for purposes of exercising personal jurisdiction.

**a. Chaim Gross Is Not a Closely Related Party to the Agreement**

The Court starts with whether Chaim Gross is a closely related party to the Pennsylvania forum selection clause. Plaintiff alleged that Chaim Gross is a member of both FellowShip and Milliard Enterprises. *See* ECF No. 78 ¶¶ 4–5. Specifically, Chaim Gross "is the 100% owner of Milliard [Enterprises]" and "owns a 75% interest in FellowShip." *Id.* ¶ 38(a), (d); *see also id.* ¶¶ 9, 86. According to Plaintiff, Chaim Gross is thus a closely related party "by virtue of [his] status as owner[] of the companies." ECF No. 123 at 16. But as explained above, ownership of a

corporate entity is just one consideration in the Court's determination as to whether an individual qualifies as a closely related party. Courts also may consider the individual's "involvement in the negotiations, the relationship between the two parties[,] and whether the non-signatory received a direct benefit from the agreement." *Carlyle Inv. Mgmt. LLC*, 779 F.3d at 219.

Beyond the allegations regarding Chaim Gross' ownership role in these two LLCs, *see* ECF No. 78 ¶¶ 4–5, 9, 38, 86, there are no factual allegations in the FAC indicating whether he also served as a senior executive, officer, or employee of these corporate entities, or otherwise indicating the extent of his involvement in operating these entities on a day-to-day basis. There are also no facts in the FAC demonstrating that Chaim Gross participated in the *negotiations* of the Agreement or the communications surrounding it. Courts have found that senior executives of companies qualify as closely related parties where they had personal involvement in or signed the contract at issue containing the forum selection clause. *See, e.g.*, *Carlyle Inv. Mgmt. LLC*, 779 F.3d at 219 (finding that an owner of a signatory entity was a closely related party where the owner was listed in the agreement as the "primary contact person" for the entity and was involved in negotiations); *Powervar, Inc. v. Power Quality Scis., Inc.*, No. 20-cv-5908, 2021 WL 2986417, at *3 (E.D. Pa. July 15, 2021) (finding that a plaintiff alleged sufficient facts to establish that Sweat, "the sole and dominant shareholder," was closely related where he "signed the [a]greement as 'Owner' of [the company]"); *O'Shaughnessy v. Palazzo*, 496 F. Supp. 3d 872, 879 (E.D. Pa. 2020) (finding that the President of SSPT was a closely related party where the plaintiff alleged that "he was personally involved in the recruitment of Plaintiff and the drafting of the documents, and that [he] personally executed the promissory note"); *Synthes*, 887 F. Supp. 2d at 610–11, 615 (finding that a Chief Operating Officer ("COO") was a closely related party where the COO worked closely with the sales representatives, had extensive knowledge of the agreements, and recognized the risk

of legal action). Here, Plaintiff has not sufficiently pleaded that Chaim Gross had any involvement in the Agreement at issue. Furthermore, Chaim Gross did not sign the Agreement; instead, Jack Kressner was the employee who purportedly signed the Agreement "as the 'authorized representative' on behalf of the 'Client'"—i.e., "FellowShip/Milliard." ECF No. 78 ¶¶ 21, 25; *see also* ECF No. 69-7 at 9. Moreover, while Plaintiff alleged generally that "Defendants accepted the benefits of the services provided by Plaintiff[,]" *see* ECF No. 78 ¶ 28, Plaintiff did not plead specific facts demonstrating how Chaim Gross himself received a direct benefit from the shipping services arrangement between Plaintiff and Defendants FellowShip and Milliard Enterprises.

Second, as to foreseeability, Plaintiff leaves the Court to speculate as to how Chaim Gross purportedly had knowledge of the Agreement, rather than pleading any facts or marshaling some evidence demonstrating that he was "aware of or participated in . . . the contractual negotiations." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 407 n.13 (3d Cir. 2017). "[C]ourts do not apply the 'closely related parties' doctrine if doing so would have been unforeseeable for the party against whom the clause would be enforced." *Id.* (collecting cases); *see also In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d at 65 (explaining that there must be "some evidentiary basis, other than pure speculation" to satisfy foreseeability). In its Opposition, Plaintiff directed the Court to two items: (1) the stipulation that FellowShip and Milliard Enterprises filed in the California Action, in which those entities consented to jurisdiction in Pennsylvania; and (2) its allegation that Plaintiff's counsel sent Chaim Gross pre-lawsuit correspondence once the Agreement had allegedly been breached. *See* ECF No. 123 at 16–17; *see also* ECF No. 78 ¶ 33. However, the fact that Chaim Gross may have been involved in making decisions over the course of this litigation as a client, and through his ownership role of the corporate entities, does not support Plaintiff's contention that it was foreseeable that the Pennsylvania forum selection clause

would later be defensively invoked against him in a personal capacity. At bottom, there are insufficient facts in the FAC for the Court to find that Chaim Gross should have foreseen that he would be bound by the forum selection clause.

For these reasons, Plaintiff has not satisfied its burden of showing that Chaim Gross is a closely related party to the Agreement or that enforcement of the forum selection clause against him was foreseeable. Accordingly, Plaintiff has failed to make out a prima facie showing that this Court can exercise personal jurisdiction over Chaim Gross consistent with the closely related parties doctrine.

**b. Shani Gross and Simcha Newmark Are Not Closely Related Parties to the Agreement**

Next, Plaintiff purports to apply the Pennsylvania forum selection clause to Shani Gross and Simcha Newmark through the closely related parties doctrine. But Plaintiff's allegations regarding Shani Gross and Simcha Newmark fail to satisfy the doctrine's requirements to an even greater extent than its allegations regarding Chaim Gross. Plaintiff attempts to manufacture a close connection between Shani Gross, Simcha Newmark, and the forum selection clause by means of their ownership position in *other* corporate entities that purportedly are "affiliated" with FellowShip and Milliard Enterprises. *See* ECF No. 123 at 16; ECF No. 145 at 12–13. Plaintiff alleged that Shani Gross is a member of Lakewood Candies and that she owns 10% of the company. *See* ECF No. 78 ¶¶ 6, 38(b). Plaintiff further alleged that Simcha Newmark is a member of FoamTex and owns one-third of the company. *Id.* ¶¶ 7, 38(c). According to Plaintiff, both Lakewood Candies and FoamTex are "affiliated" with FellowShip and Milliard Enterprises. *Id.* ¶¶ 9, 83. However, there are no factual allegations in the FAC that Shani Gross or Simcha Newmark are or were owners of FellowShip or Milliard Enterprises. Nor are there any factual allegations that either Shani Gross or Simcha Newmark were ever involved in the negotiations of

the Agreement between Plaintiff, FellowShip, and Milliard Enterprises, or that Shani Gross or Simcha Newmark received a direct benefit from the Agreement. Indeed, Shani Gross and Simcha Newmark are each referenced in only three allegations in the FAC. *See id.* ¶¶ 6–7, 17, 38(b)–(c). And Plaintiff has not pleaded sufficient facts or presented an "evidentiary basis" showing that Shani Gross or Simcha Newmark had an awareness of the forum selection clause or that it could be defensively invoked against them. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d at 65. Applying the forum selection clause to Shani Gross and Simcha Newmark under these circumstances would stretch the closely related parties doctrine too far and would not be foreseeable.

Moreover, in its Opposition to Simcha Newmark's Motion, Plaintiff argues that "Mr. Newmark, as FoamTex's one-third owner, is closely related to FoamTex in the same way that *Carlyle* recognizes ownership interest as relevant to the closely-related-party inquiry." ECF No. 145 at 13 (citing *Carlyle Inv. Mgmt. LLC*, 779 F.3d at 219). Once again, while ownership is a relevant consideration in the closely related parties inquiry, the *Carlyle Investment Management LLC* court focused on other facts beyond mere ownership to find a close connection between affiliated entities, a common owner, and a contract. In *Carlyle Investment Management LLC*, Plaza (one of the entities that the Third Circuit found was closely related) was the director of Moonmouth (an affiliated corporate entity) and executed the subscription agreement at issue on behalf of Moonmouth. *Carlyle Inv. Mgmt. LLC*, 779 F.3d at 219. Both Plaza and Moonmouth were "owned and controlled by" the same individual, Reijtenbagh. *Id.* In addition, provisions within the "[s]ubscription [a]greement itself indicate[d] the close relationship between Moonmouth, Plaza, and Reijtenbagh." *Id.* Reijtenbagh was listed as the "primary contact person" for Moonmouth and was "also listed as a person authorized to give and receive instructions on

behalf of Moonmouth." *Id.* The subscription agreement further stated that Plaza's income was the "'source of funds' for Moonmouth's investment[,]" and the negotiations surrounding the subscription agreement "were conducted by Moonmouth, Plaza, and Reijtenbagh." *Id.* Based on that amalgamation of facts, the Third Circuit agreed with the district court that Moonmouth, Plaza, and Reijtenbagh were all closely related to the agreement. *Id.*

Here, by contrast, there are minimal facts in the FAC beyond Simcha Newmark's partial ownership of FoamTex—an entity that is allegedly affiliated with FellowShip and Milliard Enterprises—that connect Newmark to the Agreement. Moreover, Plaintiff does not allege that FoamTex or Newmark are mentioned in the Agreement itself, nor does Plaintiff allege that Newmark is an owner of either of the signatory companies. *See* ECF No. 78 ¶¶ 38(a), (c)–(d). In short, the facts that the Third Circuit relied upon in *Carlyle Investment Management LLC* to find that an owner of an affiliated company was closely related to a contract are absent here with respect to Simcha Newmark.

Therefore, Plaintiff has not adequately demonstrated that Shani Gross or Simcha Newmark are "closely related to the [A]greement in such a way that it would be foreseeable that they would be bound" to its forum selection clause. *Carlyle Inv. Mgmt. LLC*, 779 F.3d at 219. The Court thus cannot exercise personal jurisdiction over Shani Gross or Simcha Newmark pursuant to the closely related parties doctrine.

**c. FoamTex Is Not a Closely Related Party to the Agreement**

Finally, Plaintiff argues that FoamTex is a closely related party to the Agreement as an "affiliated entit[y]" that is also "owned and controlled by" Chaim Gross. ECF No. 123 at 16; *see also* ECF No. 78 ¶¶ 7, 9, 38(c) (alleging that FoamTex is also owned by Chaim Gross and is "affiliated" with Milliard Enterprises and FellowShip). However, beyond Plaintiff's allegation that there is a common owner among the signatory companies and FoamTex, there are no

allegations in the FAC that FoamTex was involved in the negotiations surrounding the Agreement. And Plaintiff does not allege that FoamTex is referenced within the Agreement. *See Carlyle Inv. Mgmt. LLC*, 779 F.3d at 219 (finding that affiliated entities with a common owner were closely related parties where one entity signed the subscription agreement on behalf of the other entity and both were referenced in provisions in the agreement); *First Financial Mgmt. Grp., Inc.*, 2012 WL 1150131, at *4 (finding that a corporation was "inextricably linked to the contract containing the forum selection clause" where the corporation "was listed as the 'entity controlled by [l]icensee'" within the contract and was established through the contract). Indeed, Plaintiff may not have even been aware of FoamTex's existence until Chaim Gross was deposed in connection with this litigation. *See* ECF No. 62 at 5–6; *cf.* ECF No. 78 ¶ 37.

Plaintiff argues that FoamTex benefited from the Agreement because "it shared the shipping accounts that Plaintiff reviewed and advised upon, used those accounts to send its shipments, and thus took advantage of the benefits of Plaintiff's services under the Agreement." ECF No. 123 at 16; *see also* ECF No. 78 ¶¶ 50, 91. But Plaintiff did not allege that the Agreement itself contained any provisions contemplating that FoamTex would receive a direct benefit from Plaintiff's services. In addition, Plaintiff did not allege that the contracting parties expected that FoamTex would receive a direct benefit from the contractual relationship. In other words, assuming the truth of Plaintiff's allegations that FoamTex has been using shipping accounts that Plaintiff advised upon in 2023 when it gave FellowShip and Milliard Enterprises access to its proprietary information, *see id.* ¶¶ 27–30, 50, 91, any benefit that FoamTex later received occurred indirectly. Furthermore, with respect to foreseeability, Plaintiff has not pleaded sufficient facts or presented an adequate "evidentiary basis" from which the Court can reasonably deduce that FoamTex had an awareness of the Pennsylvania forum selection clause or that it could be invoked

against it. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d at 65; *cf. Metcalfe*, 566 F.3d at 330 (explaining that a "plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper'" (quoting *Dayhoff Inc.*, 86 F.3d at 1302)).

For these reasons, Plaintiff has not sufficiently demonstrated that this Court can exercise personal jurisdiction over FoamTex in accordance with the closely related parties doctrine.

***3. Traditional Test for Specific Jurisdiction***

Next, the Court turns to the traditional test for specific jurisdiction. In its FAC and its Opposition, Plaintiff asserted that the Court can exercise specific jurisdiction over FoamTex pursuant to the traditional test that assesses a defendant's contacts with the forum. *See* ECF No. 78 ¶ 16; *see also* ECF No. 123 at 17.[4] In its Motion to Dismiss, FoamTex argues that specific jurisdiction does not exist because Plaintiff did not identify any "Pennsylvania-directed conduct by FoamTex" in its FAC and only alleged generally that FoamTex "'us[ed] shipping services provided by Plaintiff' and 'benefit[ed] from' services 'provided . . . from this District.'" ECF No. 111-1 at 16 (quoting ECF No. 78 ¶ 16). According to FoamTex, the use of Plaintiff's "services does not establish that FoamTex purposefully directed conduct at the forum." *Id.* at 16–17. Instead, FoamTex argues that the "*Calder* effects test" requires a plaintiff to demonstrate conduct

[4] In its Opposition to Simcha Newmark's Motion to Dismiss, Plaintiff argues for the first time that this Court can exercise specific jurisdiction over Newmark under the traditional test. *See* ECF No. 145 at 13–14. Plaintiff claims that Newmark's "use of a milliardbrands.com email address in connection with Defendants' shipping accounts . . . and his ownership interest in FoamTex, which manufactures its products in Pennsylvania" demonstrate purposeful availment of the privilege of conducting business in Pennsylvania. *Id.* at 13. However, Plaintiff did not allege in its FAC that the Court can exercise specific jurisdiction over Newmark under the traditional test, so the Court will not address this theory as to Newmark because "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotations and citation omitted); *see also* ECF No. 145 at 14 (arguing that "Mr. Newmark's personal jurisdiction exposure . . . rests on paragraph 17's closely-related-party allegation . . . and from his role as an aider and abettor of Mr. Gross's fraud" (citing ECF No. 78 ¶¶ 104–06)).

that is "'*expressly aimed*' at the forum." *Id.* at 17 (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998)).

Plaintiff reduces its position to a single paragraph in its Opposition. *See* ECF No. 123 at 17. Plaintiff contends that specific jurisdiction exists because FoamTex has "purposefully availed itself of the privilege of conducting activities within Pennsylvania by using shipping services provided by Plaintiff to send shipments of its items here, and by exploiting Plaintiff's services provided from this district." *Id.* (first citing ECF No. 78 ¶ 16; then citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). In support of its argument, Plaintiff points to portions of Chaim Gross' deposition testimony, in which he stated that "FoamTex manufactures its products in Pennsylvania." *Id.* (citing ECF No. 123-2 at 57:10–19). According to Plaintiff, "[i]t therefore follows that [FoamTex] conducted shipping activity in Pennsylvania[,]" and "Plaintiff's claims 'arise out of or relate to' that shipping activity." *Id.*

Specific jurisdiction "covers defendants less intimately connected with a State." *Ford Motor Co.*, 592 U.S. at 359. The Supreme Court has set forth "two tests for specific jurisdiction: (1) the 'traditional' test—also called the 'minimum contacts' or purposeful availment test[;]" and "(2) the 'effects' test," which was articulated in *Calder v. Jones*, 465 U.S. 783 (1984). *See Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (citations omitted). The traditional test has three components. First, a plaintiff must demonstrate that "the defendant has minimum contacts with the forum such that it purposefully avail[ed] itself of the privilege of conducting activities within the forum and invok[ed] the benefits and protections of [the forum's] laws." *Id.* (internal quotations and citation omitted). Next, the plaintiff's claims must "arise out of or relate to the defendant's contacts with the forum[,]" such that there is evidence of "a strong relationship among the defendant, the forum, and the litigation." *Ford Motor Co.*, 592 U.S. at 359, 365 (internal

quotations and citations omitted). Finally, exercising jurisdiction over the defendant must "comport[] with traditional notions of fair play and substantial justice such that the defendant should reasonably anticipate being haled into court in that forum." *Hasson*, 114 F.4th at 186 (internal quotations and citation omitted).[5]

The Court turns to evaluating whether Plaintiff has satisfied the traditional test for specific jurisdiction, beginning with the first prong. FoamTex is a New Jersey LLC with its principal place of business in New Jersey. *See* ECF No. 78 ¶ 7. Plaintiff did not allege that FoamTex is a signatory to the Agreement with Plaintiff, but even if it were a signatory, "[t]he mere existence of a contract" with an in-forum plaintiff "is insufficient to establish minimum contacts." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (citing *Burger King Corp.*, 471 U.S. at 478). Here, Plaintiff pleaded one generalized allegation that FoamTex "directed [its] activities toward, and purposefully availed [itself] of, the forum by conducting business in this District, including by using shipping services provided by Plaintiff to send shipments of [its] items and by exploiting and financially benefiting from the services provided by Plaintiff from this District." ECF No. 78 ¶ 16. But that singular, conclusory allegation tells the Court almost nothing as to whether or how FoamTex was targeting its activities towards Pennsylvania. And Plaintiff did not otherwise plead specific facts regarding any in-forum conduct by FoamTex in its FAC. Instead, Plaintiff primarily attempts to tie its own contacts—i.e., its provision of services in Pennsylvania—to FoamTex,

[5] In its Motion to Dismiss, FoamTex invoked *Calder*'s effects test. *See* ECF No. 111-1 at 17. However, Plaintiff did not provide any argument in response to FoamTex's invocation of the effects test and instead only addressed the traditional test in its Opposition. *See* ECF No. 123 at 17. Since Plaintiff "had ample opportunity to" address this theory in response to FoamTex's Motion to Dismiss, but "failed to do so[,]" the Court will not consider the argument here as a basis by which it can exercise personal jurisdiction over FoamTex. *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (finding that the "district court exercised sound discretion when it refused to consider an argument that, in effect, had been waived" (collecting cases)).

which is insufficient to satisfy the first prong. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). Notwithstanding this pleading deficiency, Plaintiff attached evidence to its Opposition indicating that FoamTex manufactures products in Pennsylvania. *See* ECF No. 123-2 at 57:10–19. Therefore, Plaintiff has made a prima facie showing that FoamTex has at least some minimum contacts with Pennsylvania by means of its manufacturing activity, such that it has purposefully availed itself of the privilege of conducting business within the forum.

Plaintiff's FAC falters at the second prong, though. When the Court scrutinizes FoamTex's contacts—manufacturing activity in Pennsylvania—in the context of the claims that Plaintiff has asserted against FoamTex, the "connection" between "the defendant, the forum, and the litigation" is "too weak" to support the exercise of specific jurisdiction. *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (internal quotations and citation omitted). When assessing specific jurisdiction, the "usual practice" is to do so "on a claim by claim basis." *United Emp. Assocs. v. Landmark Constr. Co., Inc.*, No. 23-cv-3668, 2024 WL 4988982, at *4 (E.D. Pa. Dec. 5, 2024) (internal quotations and citation omitted), *appeal dismissed*, No. 25-1024, 2025 WL 1824825 (3d Cir. May 1, 2025); *see also Danziger & De Llano, LLP*, 948 F.3d at 130 ("Whether a plaintiff's claims 'arise out of or relate to' the defendant's contacts with the forum state depends, in part, on the type of claim brought." (citation omitted)). However, "it may not be necessary to do so for certain factually overlapping claims," such as when a plaintiff asserts a breach of contract claim and an unjust enrichment claim in the alternative, as Plaintiff has done here with respect to FoamTex. *United Emp. Assocs.*, 2024 WL 4988982, at *4 (internal quotations and citation omitted).

Notably, Plaintiff does not contend that its claims against FoamTex arise out of or relate to any of FoamTex's *manufacturing* activity in Pennsylvania. *See* ECF No. 123 at 17. Instead, Plaintiff's position is that its claims against FoamTex "'arise out of relate to' [FoamTex's] *shipping* activity." *Id.* (emphasis added); *see also* ECF No. 78 ¶ 16. That is a significant issue for Plaintiff because it simply assumes that, because FoamTex manufactured products in Pennsylvania, "[i]t therefore follows that it conducted shipping activity in Pennsylvania." ECF No. 123 at 17. The Court does not make the same assumption. Unlike FoamTex's manufacturing activity, which was bolstered by deposition testimony, Plaintiff has not presented any evidence in support of its contention that FoamTex ships its products in Pennsylvania. Nor does the FAC contain any factual allegations regarding, for example, the extent or nature of FoamTex's shipment of its products in Pennsylvania, whether FoamTex ships its products to customers located in Pennsylvania, or any quantifiable evidence of shipments in Pennsylvania. In other words, Plaintiff has not made a prima facie showing that FoamTex's shipping activities serve as a contact to the forum. And because FoamTex challenged jurisdiction, it is Plaintiff's burden to set forth "competent evidence that jurisdiction is proper," *Metcalfe,* 566 F.3d at 330 (internal quotations and citation omitted), as opposed to relying on "mere allegations" alone that FoamTex made use of Plaintiff's shipping services. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004).

Turning to the claims that Plaintiff has brought against FoamTex, the Court begins with whether Plaintiff's breach of contract claim sufficiently arises out of or relates to FoamTex's alleged manufacturing activity in Pennsylvania.[6] To demonstrate relatedness in a contract case,

[6] Because Plaintiff's unjust enrichment claim is "factually overlapping[,]" the Court does not independently assess that claim. *See United Emp. Assocs.*, 2024 WL 4988982, at *4.

district courts inquire whether "[t]he defendant's contacts with the forum" were "instrumental in either the formation of the contract or its breach." *Danziger & De Llano, LLP*, 948 F.3d at 130 (emphasis omitted). For example, "courts recognize 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' as evidence of such purposeful contact" from which a plaintiff's claims arise out of or relate to. *United Emp. Assocs.*, 2024 WL 4988982, at *4 (quoting *Burger King*, 471 U.S. at 479).

With respect to Plaintiff's contract-based claim, Plaintiff has not adequately demonstrated how FoamTex's manufacturing contacts with Pennsylvania were instrumental in either the formation of, or the alleged breach of, the Agreement between Plaintiff, FellowShip, and Milliard Enterprises. Plaintiff did not allege that there is an express, written contract between Plaintiff and FoamTex; rather, Plaintiff relies on a single enterprise theory of liability to impute a breach to FoamTex. *See* ECF No. 78 ¶¶ 85–89. In addition, the FAC does not contain facts regarding any contractual negotiations between Plaintiff and FoamTex that may have been conducted in Pennsylvania, any communications between Plaintiff and FoamTex that may have been exchanged in Pennsylvania, or any longstanding course of dealing or business relationship that may have occurred in Pennsylvania. Moreover, FoamTex is not alleged to have sent any payments to Plaintiff in connection with the Agreement. *See id.* ¶ 52 (alleging that a bank account in Lakewood Candies' name made a $25,000 payment to Plaintiff). In other words, the contractual contacts that courts tend to look for when evaluating relatedness are not present in Plaintiff's FAC. *See United Emp. Assocs.*, 2024 WL 4988982, at *9 ("reject[ing] the notion that the few contacts by [the defendant] were at all instrumental in the formation or breach of a contract between" the defendant and plaintiff and therefore finding a lack of personal jurisdiction).

With respect to Plaintiff's PUVTA claim against FoamTex, Plaintiff likewise has not sufficiently demonstrated how FoamTex's manufacturing activity in Pennsylvania arises out of or relates to a claim centered around a fraudulent transfer. For example, Plaintiff did not allege that the purported grant of a software license and transfer of "business and assets to FoamTex" occurred in Pennsylvania. ECF No. 78 ¶¶ 51, 73. Nor did Plaintiff allege that any movement of assets from FellowShip's or Milliard Enterprises' bank accounts to FoamTex was tied to accounts located in Pennsylvania. The only connection that this claim appears to have to Pennsylvania is that the alleged creditor (i.e., Plaintiff) is a Pennsylvania entity. *See id.* ¶ 3. However, as discussed above, this is insufficient for the purposes of establishing that specific jurisdiction exists over FoamTex. *See Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.").

In sum, there is not a "strong relationship among the defendant, the forum, and the litigation" with respect to the contacts Plaintiff has demonstrated that FoamTex has with Pennsylvania and the claims that Plaintiff has asserted against FoamTex. *Ford Motor Co.*, 592 U.S. at 365 (internal quotations and citation omitted). Therefore, Plaintiff has not adequately met its burden of showing that this Court can exercise specific jurisdiction over FoamTex under the traditional test.

#### *4. Alter Ego Jurisdiction*

Next, Plaintiff alleged that this Court can exercise personal jurisdiction over Defendants Chaim Gross, Shani Gross, and FoamTex pursuant to an alter ego theory of jurisdiction. *See* ECF No. 78 ¶¶ 16–17.[7] In its Opposition, Plaintiff argues that because Chaim Gross, Shani Gross, and

[7] Plaintiff initially alleged that this Court can exercise personal jurisdiction over Simcha Newmark as an alter ego of FellowShip and Milliard Enterprises. *See* ECF No. 78 ¶ 17. However, Plaintiff has since abandoned its alter ego theory as to Newmark by failing to address the theory in its

FoamTex are all "alter egos of Milliard [Enterprises] and Lakewood, who are subject to personal jurisdiction in this Court[,]" the Court can, in turn, exercise personal jurisdiction over them as well by imputation. ECF No. 123 at 17. However, in its FAC, Plaintiff only alleged that Chaim Gross, Shani Gross, and FoamTex are "alter egos of *FellowShip and Milliard [Enterprises]*." ECF No. 78 ¶¶ 16–17 (emphasis added). To the extent that Plaintiff now argues in its Opposition that these three Defendants are also alter egos of Lakewood Candies, the Court will not consider that argument because Plaintiff cannot use its Opposition to amend the FAC. *See Commonwealth of Pa. ex rel. Zimmerman*, 836 F.2d at 181 (internal quotations and citation omitted).

Under the alter ego theory of jurisdiction, "[a] court may exercise personal jurisdiction, consistent with the Constitution, over a corporate entity that is the alter ego of a party over which jurisdiction is proper." *Katz v. DNC Servs. Corp.*, No. 16-cv-5800, 2017 WL 5885672, at *4 (E.D. Pa. Nov. 29, 2017) (internal quotations and citation omitted); *cf. Shuker*, 885 F.3d at 781 ("[I]f a subsidiary is merely the agent of a parent corporation, . . . or if the parent corporation otherwise 'controls' the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." (internal quotations and citations omitted)). "The exercise of jurisdiction over an alter ego is compatible with due process because a corporation and its alter ego are the *same entity*—thus, the jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of the *International Shoe* due process

Opposition to Newmark's Motion. *See* ECF No. 145 at 12–14 (arguing only that the Court can exercise personal jurisdiction over Newmark under the closely related parties doctrine and the traditional test for specific jurisdiction); *see also Dreibelbis*, 274 F. App'x at 185 (affirming a district court's refusal to consider an argument where the plaintiff "had ample opportunity to make this argument in response to defendants' motion to dismiss and failed to do so"). Accordingly, the Court need not determine whether Simcha Newmark is an alter ego of FellowShip or Milliard Enterprises for jurisdictional purposes. *Id.* ("[T]he [d]istrict [c]ourt exercised sound discretion when it refused to consider an argument that, in effect, had been waived." (collecting cases)).

analysis." *Sys. Div., Inc. v. Teknek Elecs., Ltd.*, 253 F. App'x 31, 37 (Fed Cir. 2007). The alter ego theory allows a court to impute an in-forum corporate entity's contacts to a related corporate entity where the plaintiff can establish that "the out-of-forum corporation either controls or is controlled by an in-forum affiliate to such a degree that the two corporations operate as a single, amalgamated entity." *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 596 (M.D. Pa. 2009); *see also In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 319 (W.D. Pa. 2010) ("[T]he alter-ego test looks to whether the degree of control exercised by the parent is greater than normally associated with common ownership and directorship and whether the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." (internal quotations and citation omitted)), *aff'd*, 683 F.3d 462 (3d Cir. 2012) [hereinafter *In re Enter.*].

When determining "whether to apply the alter ego theory, [the Court] must start from the general rule that the corporate entity should be upheld unless specific, unusual circumstances call for an exception." *Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 701 (E.D. Pa. 2023) (internal quotations and citation omitted). "Proving that a corporation is merely an alter ego is a burden that is notoriously difficult for plaintiffs to meet." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018) (internal quotations and citation omitted); *see also Reynolds v. Turning Point Holding Co., LLC*, No. 19-cv-1935, 2020 WL 953279, at *3 (E.D. Pa. Feb. 26, 2020) ("Courts have noted a 'strong presumption' against . . . deeming companies alter-egos of each other." (collecting cases)). That said, determining whether a court has jurisdiction "over an alleged alter ego is 'a less onerous standard' than [the standard that courts] apply under [Rule] 12(b)(6) for piercing the corporate veil for liability purposes." *Sugartown Worldwide LLC v. Shanks*, 129 F. Supp. 3d 201, 205 (E.D. Pa. 2015) (quoting *Bell v. Fairmont Raffles Hotel Int'l*,

No. 12-cv-757, 2013 WL 6175717, at *3 (W.D. Pa. Nov. 25, 2013)). In this district, courts consider the following ten factors when determining whether a corporate entity can be understood to be an alter ego for jurisdictional purposes:

> (1) ownership of all or most of the stock of the related corporation; (2) common officers and directors; (3) common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance by the related corporation of business functions which the principal corporation would normally conduct through its own agent or departments; (9) acting of the related corporation as marketing arm of the principal corporation, or as an exclusive distributor; and (10) receipt by the officers of the related corporation of instruction from the principal corporation.

*Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 471 (E.D. Pa. 2019) (citing *Neopart Transit, LLC v. CBM N.A. Inc.*, 314 F. Supp. 3d 628, 645 (E.D. Pa. 2018)). "No single factor is dispositive, and the court may consider all relevant evidence to determine whether . . . actual control" is demonstrated. *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 570 (M.D. Pa. 2009).

At the outset, the Court questions the applicability of the alter ego theory to FoamTex in this case because this theory tends to arise in the context of general jurisdiction when a plaintiff seeks to impute the continuous and systematic contacts of an in-forum subsidiary corporation to an out-of-forum parent corporation. *See Lutz*, 376 F. Supp. 3d at 470–71 (addressing the alter ego theory of personal jurisdiction as applied to the subsidiary and parent corporations); *Katz*, 2017 WL 5885672, at *4–5 (expressing skepticism that the alter ego theory applies where there is "no formal corporate relationship" between defendants). Here, Plaintiff did not allege that FoamTex has a parent-subsidiary relationship with FellowShip or Milliard Enterprises, nor did Plaintiff allege that FoamTex is a successor company to either entity. Nevertheless, because some courts

appear to have applied the doctrine outside of a parent-subsidiary relationship, the Court proceeds to consider the alter ego theory. *See Copia Commc'ns, LLC v. AMResorts, L.P.*, No. 16-cv-5575, 2017 WL 4012687, at *6 (E.D. Pa. Sept. 11, 2017) (explaining that the alter ego theory is "most readily applied in the context of parent/subsidiary relationships between entities[,]" but noting that "in some instances the alter ego theory may apply in the context of other sorts of corporate arrangements, so long as their operations and management are sufficiently interconnected").

**a. FoamTex Is Not an Alter Ego**

Plaintiff initially alleged that FoamTex is an alter ego of FellowShip and Milliard Enterprises. *See* ECF No. 78 ¶ 16. However, in its Opposition, Plaintiff no longer argues that FoamTex is an alter ego of FellowShip, *see* ECF No. 123 at 17–19, so it has abandoned its assertion of alter ego jurisdiction over FoamTex by way of its alleged relationship with that corporate entity. *See Dreibelbis*, 274 F. App'x at 185 (finding that the "district court exercised sound discretion when it refused to consider an argument that, in effect, had been waived" (collecting cases)). Accordingly, the Court only addresses whether FoamTex can be considered an alter ego of *Milliard Enterprises*.

Furthermore, although Plaintiff's argument is not well-fleshed out, Plaintiff appears to be seeking to impute Milliard Enterprises' consent to jurisdiction through the forum selection clause to FoamTex, rather than imputing jurisdiction to FoamTex through Milliard Enterprises' contacts with the forum. *See* ECF No. 123 at 18–19. Courts have found that waivers of personal jurisdiction can be imputed to alter ego corporations. *See Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (finding that "it is consistent with due process to impute a corporation's waiver of personal jurisdiction to its successor (or its individual alter ego)"); *see also Platina Bulk Carriers Pte Ltd. v. Praxis Energy Agents DMCC*, No. 20-cv-4892, 2021 WL

4137528, at *4 (S.D.N.Y. Sept. 10, 2021) ("[A] forum selection clause may be enforced against a [signatory] company's alter ego.").

Here, some of the ten factors articulated above point towards a finding that FoamTex is an alter ego of Milliard Enterprises. As to the second factor, FoamTex shares a common majority owner with Milliard Enterprises—i.e., Chaim Gross. *See* ECF No. 78 ¶ 38(a), (c); *see also id.* ¶ 39. As to the third and fourth factors, Plaintiff alleged that FoamTex and Milliard Enterprises "project[] the image of being a singular business" under the "Milliard" or "Milliard Brands" name. *Id.* ¶ 40; *see also id.* ¶¶ 41–43, 61. In addition, representatives of both FoamTex and Milliard Enterprises "used milliardbrands.com email addresses when communicating with third parties[,]" *see id.* ¶ 43; used "the same shared website, www.milliardbrands.com[,]" *see id.* ¶ 44; used that website "to market and sell the furniture, mattresses, and household goods products of Milliard [Enterprises] . . . and Foamtex, all under the same 'Milliard' name and logo[,]" *see id.* ¶ 45; and "interchangeably used the same Amazon storefronts to market and sell their products online[,]" *see id.* ¶ 46; *see also id.* ¶ 40 (alleging that FoamTex and Milliard Enterprises sell the same products). As to the sixth and eighth factors, Plaintiff alleged that FoamTex and Milliard Enterprises "have used the same set of shipping accounts and subaccounts[,]" *see* ECF No. 78 ¶ 50; that, on "information and belief," FoamTex and Milliard Enterprises "have shared the same bank accounts with one another and comingled funds[,]" *see id.* ¶ 52; and that, on "information and belief," Milliard Enterprises has "laid out the money for FoamTex's shipping needs[,]" *see id.* ¶ 54. Therefore, there is some indication that the two companies used a similar sales system and that Milliard Enterprises has performed business functions for FoamTex, though Plaintiff's showing of integration and operational control is not particularly strong, nor bolstered by evidence. *See In re Enterpr.*, 735 F. Supp. 2d at 323 (finding that "the resources defendant parent provided

to its operating subsidiaries" did "not show a high-level of operational control over the operating subsidiaries[,]" and the fact that a company "is portrayed as a single brand to the public" does not necessarily "demonstrate the necessary control.").

Other factors cut in the opposite direction and against a high degree of day-to-day operational control. As to the first factor, there are no allegations in the FAC that FoamTex owns the stock of Milliard Enterprises, or vice versa. As to the second factor, beyond a common owner, there are otherwise no allegations as to whether these two companies share common officers or directors. *Cf. id.* ("A degree of control naturally flows from" the "sharing by the corporations of directors and the ownership by defendant parent of one-hundred percent of [a subsidiary's] stock[,] . . . but this incidental control does not rise to the level required to permit the exercise of jurisdiction over the parent."). As to the fifth and seventh factors, Plaintiff did not specifically allege that FoamTex and Milliard Enterprises share common employees or managerial and supervisory personnel. As to the ninth and tenth factors, Plaintiff did not allege that FoamTex acts as a marketing arm or exclusive distributor for Milliard Enterprises, or that officers of Milliard Enterprises receive instructions from or are directed by FoamTex on a day-to-day basis. Furthermore, the record before the Court does not reflect, for example, whether or the extent to which FoamTex controls Milliard Enterprises' budget, or whether FoamTex oversees essential components of Milliard Enterprises' businesses. This is significant because "[a]lter ego jurisdiction requires evidence of such control." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 571.

On balance, after considering the relevant factors, the Court finds that Plaintiff has failed to plead sufficient facts and has failed to put forth "competent evidence" demonstrating that FoamTex is an alter ego of Milliard Enterprises for jurisdictional purposes. *Dayhoff Inc.*, 86 F.3d

at 1302. As alleged in the FAC, there are not enough facts showing that FoamTex pervasively "controls or is controlled by" Milliard Enterprises "to such a degree that the two corporations operate as a single, amalgamated entity." *Katz*, 2017 WL 5885672, at *4 (internal quotations and citation omitted); *see also In re Enter.*, 735 F. Supp. 2d at 324 (finding that an operating subsidiary was "not the alter ego of defendant parent" where the evidence did not "show defendant parent exercised any control over the internal workings or day-to-day operations of its subsidiaries" (internal quotations and citation omitted)); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 571 (finding that plaintiff failed to demonstrate "a prima facie case of alter ego jurisdiction" where the evidence presented did not establish "the corporate parents' actual control over the daily affairs of their subsidiaries"). Accordingly, this Court cannot exercise personal jurisdiction over FoamTex by imputing Milliard Enterprises' agreement to a forum selection clause to FoamTex pursuant to an alter ego theory.

**b. Chaim and Shani Gross Are Not Alter Egos**

The Court turns next to the individual Defendants, Chaim and Shani Gross. Plaintiff initially alleged in its FAC that Chaim and Shani Gross are "alter egos of FellowShip and Milliard [Enterprises]." ECF No. 78 ¶ 17. In its Opposition, however, Plaintiff now argues that Chaim and Shani Gross are "alter egos of Lakewood [Candies] and/or the other entity Defendants[,]" but primarily provides argument regarding Lakewood Candies. ECF No. 123 at 19. Since Plaintiff did not allege in its FAC that Chaim and Shani Gross are alter egos of Lakewood Candies, the Court will not address that contention here because, as explained above, Plaintiff cannot use its Opposition to amend the FAC. *See Commonwealth of Pa. ex rel. Zimmerman*, 836 F.2d at 181. Despite the minimal argument that Plaintiff provided as to how Chaim and Shani Gross can be considered alter egos of FellowShip or Milliard Enterprises, the Court will analyze this argument.

Courts have found that "[e]xercising jurisdiction over a corporate control person who is alleged to be an entity's alter ego is compatible with due process when [the court] can properly exercise jurisdiction over the entity based on the premise the alter ego is the same entity." *Sugartown Worldwide LLC*, 129 F. Supp. 3d at 205 (internal quotations and citation omitted) (collecting cases); *see also Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual . . . when the individual . . . is an alter ego . . . of a corporation that would be subject to personal jurisdiction in that court." (quoting *Patin*, 294 F.3d at 653)); *United Emp. Assocs.*, 2024 WL 4988982, at *10 (same). Here, the Court has personal jurisdiction over FellowShip and Milliard Enterprises based on the forum selection clause and the stipulation that they signed. However, in order to determine whether Chaim and Shani Gross can be considered alter egos of either of these two corporate entities, the Court needs to first determine whether grounds exist to pierce the corporate veil for jurisdictional purposes.

**i. Applicable Law on Veil Piercing**

"[V]eil piercing for jurisdictional purposes is *substantive* where, to retain personal jurisdiction over one defendant, as the alter ego of another, would mean subjecting that defendant to potential liability that it would not otherwise face." *Id.* at *4. Therefore, the Court applies principles from state law.[8]

---

[8] As discussed above, *see supra* note 2, the parties did not conduct a choice-of-law analysis in their briefing. Defendants Chaim and Shani Gross assumed that Pennsylvania's law on veil piercing applies. *See* ECF No. 109-1 at 10–11; ECF No. 110-1 at 11–12. Meanwhile, Plaintiff cited to a case from the Eastern District of Pennsylvania that discusses two elements from New Jersey's law on veil piercing. *See* ECF No. 123 at 19 (citing *Millard v. Yassen Assocs., LLC*, No. 22-cv-694, 2022 WL 17093936, at *4 (E.D. Pa. Nov. 21, 2022)). However, Plaintiff then appears to have referenced and applied the ten factors that courts in the Eastern District of Pennsylvania look to

Under Pennsylvania law, the corporate form may be disregarded if a plaintiff can demonstrate that the corporate veil should be pierced. *See Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978) ("[W]henever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded."); *see also In re Dravo LLC-Derivative Claims Against Carmeuse*

---

when evaluating alter ego jurisdiction, such as those articulated in *In re Chocolate Confectionary Antitrust Litigation*, 641 F. Supp. 2d 367, 384–85 (M.D. Pa. 2009). *See* ECF No. 123 at 19–20 (arguing that "the factors discussed above establish that Lakewood [Candies]—the entity jointly owned by Mr. Gross and Ms. Gross—is operated as a mere instrumentality of its individual owners"); *see also id.* at 18 (citing to the ten factors for alter ego jurisdiction). Therefore, Plaintiff appears to have conflated Pennsylvania and New Jersey law, and it is unclear from Plaintiff's brief whether Plaintiff's position is that New Jersey or Pennsylvania law controls. If Plaintiff's position is that New Jersey law applies, then Plaintiff failed to reference the relevant factors for veil piercing under New Jersey law, such as "gross undercapitalization[,] failure to observe corporate formalities, [and] non-payment of dividends," among others. *See Pasternack v. Klein*, No. 14-cv-2275, 2017 WL 10810183, at *8 (E.D. Pa. July 24, 2017) (internal quotations and citation omitted), *aff'd*, 751 F. App'x 332 (3d Cir. 2018).

Since none of the parties conducted a choice-of-law analysis and the parties appear to have relied at least in part on principles from Pennsylvania law, the Court will apply Pennsylvania law for the Motions to Dismiss. The Court reiterates that they have "waived any objection to that choice of law by failing to make" any argument regarding it. *Shuker*, 885 F.3d at 776 n.16.

However, the Court notes that "Pennsylvania choice of law principles" typically instruct a court to "look to the law of the state in which an entity is incorporated to determine whether a plaintiff may pierce that entity's corporate veil[,]" which would suggest that New Jersey's law on veil piercing would ordinarily be applied for Milliard Enterprises and California's law on veil piercing would ordinarily be applied for FellowShip. *McElroy v. FirstEnergy Corp.*, 824 F. App'x 97, 99 (3d Cir. 2020); *see also Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 158 A.3d 203, 236 (Pa. Commw. Ct. 2017) (noting that "[u]nder Pennsylvania law, the existence and extent of shareholder liability . . . is determined by the law of the state of incorporation[,]" so the law of the state of incorporation also governs veil piercing), *aff'd in part, rev'd in part sub nom.*, *Commonwealth ex rel. Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010 (Pa. 2018).

Moving forward in this action, all counsel are instructed to conduct a better and more comprehensive analysis of the relevant law in their briefing, so that the legal issues that the parties seek a ruling on from the Court are more clearly set forth. Overall, the briefing for the Motions to Dismiss has not met the standards that are expected in the Eastern District of Pennsylvania, and would not be acceptable at the Third Circuit level.

*Lime, Inc.*, 357 A.3d 104, 118 (Pa. 2026) ("[W]hen persons and entities establish corporations or LLCs, they are not free to blur the lines of the capacity in which they act as it may suit them" (internal quotations and citation omitted)). As relevant here, "[w]hen a court is faced with determining whether the equitable doctrine of veil piercing is available to a plaintiff," the court uses as a starting point "the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Id.* (internal quotations and citation omitted). In Pennsylvania, "there is a strong presumption . . . against piercing the corporate veil." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995).

The Supreme Court of Pennsylvania has endorsed "a two-part standard for evaluating whether a plaintiff can pierce a corporation's veil of protection[.]" *In re Dravo LLC-Derivative Claims Against Carmeuse Lime, Inc.*, 357 A.3d at 119. "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and second, adherence to the corporate fiction under the circumstances would sanction fraud or promote injustice[.]" *Mortimer v. McCool*, 255 A.3d 261, 286–87 (Pa. 2021) (internal quotations and citation omitted). There are various factors that are relevant in guiding the veil piercing inquiry, including "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs[,] and use of the corporate form to perpetrate a fraud." *Id.* at 278 (internal quotations and citation omitted). In addition, an owner of a corporation can still be held liable for the acts of a corporation "without a specific finding of fraud, in circumstances including wherever equity requires that such be done either to prevent fraud, illegality[,] or injustice[,] or when recognition of the corporate entity would defeat public policy or shield someone from public liability for crime." *Carmen Enters., Inc. v. Carpenter*, No. 2151

EDA 2023, 2025 WL 46741, at *5 (Pa. Super. Ct. Jan. 8, 2025) (internal quotations and citation omitted).

### ii. Veil Piercing Is Not Warranted Against Shani Gross

As to Shani Gross, Plaintiff did not allege that she was an owner of FellowShip or Milliard Enterprises, or that she was involved in the operation of those corporate entities. In addition, Plaintiff did not present any evidence indicating that Shani Gross intermingled her personal affairs and accounts with those of FellowShip or Milliard Enterprises, or that she was using either entity "to perpetrate a fraud." *Mortimer*, 255 A.3d at 278 (internal quotations and citation omitted). The record before the Court does not support piercing the corporate veil against Shani Gross for jurisdictional purposes, so the Court cannot exercise personal jurisdiction over Shani Gross pursuant to an alter ego theory.

### iii. Veil Piercing Is Not Warranted Against Chaim Gross

Piercing the corporate veil against Chaim Gross, who "owns a 75% interest in FellowShip" and "is the 100% owner of Milliard [Enterprises,]" is a closer call. ECF No. 78 ¶ 38(a), (d). However, Plaintiff likewise failed to satisfy its burden of making a prima facie showing that veil piercing is warranted with respect to Chaim Gross, even under the "less onerous standard" of piercing for jurisdictional, as opposed to liability purposes. *Sugartown Worldwide LLC*, 129 F. Supp. 3d at 205 (internal quotations and citation omitted).

First, there are no allegations that FellowShip and Milliard Enterprises were grossly undercapitalized, though Plaintiff did allege that FellowShip and Milliard Enterprises have now "both gone out of business" and "currently have no significant assets." ECF No. 78 ¶¶ 58–59. Moreover, "a judgment in excess of $30 million has been entered against FellowShip and Lakewood Candies in a California state court action." *Id.* ¶ 58. Accordingly, while the Court can

reasonably infer that the two entities may have been undercapitalized, there is not conclusive evidence demonstrating as much. *See Arrowhead Conveyor Corp. v. Giuseppe's Finer Foods, Inc.*, Nos. 309 WDA 2019 & 351 WDA 2019, 2020 WL 1460815, at *10 (Pa. Super. Ct. Mar. 24, 2020) ("It is not fraudulent for investors to take reasonable, legal steps to wind down a failing business venture.").

Second, there is some indication that FellowShip and Milliard Enterprises failed to properly "adhere to corporate formalities." *Mortimer*, 255 A.3d at 278 (internal quotations and citation omitted). For example, Plaintiff alleged that FellowShip and Milliard Enterprises "have used the same set of shipping accounts and subaccounts" and that FellowShip and Milliard Enterprises shared the same set of documents. ECF No. 78 ¶¶ 50, 56; *see also id.* ¶ 53. Plaintiff further alleged on "information and belief" that FellowShip and Milliard Enterprises "do not properly document transactions between each other or compensate each other for services provided or assets transferred between one another[,]" and "have shared the same bank accounts with one another and comingled funds." *Id.* ¶¶ 51–52. Assuming the truth of Plaintiff's factual allegations for the purpose of resolving Defendants' Motions to Dismiss, it appears that corporate formalities may not have always been observed among the various entities that Chaim Gross owns. However, Plaintiff did not bolster these allegations with evidence, which is striking given that FellowShip and Milliard Enterprises have been in this litigation from the start and extensive discovery has already been conducted as to these entities. Even if Plaintiff had supplied evidence, FellowShip's and Milliard Enterprises' alleged failures to adhere to corporate formalities does not in and of itself demand veil piercing. Indeed, the Third Circuit has observed that "[n]ot every disregard of corporate formalities or failure to maintain corporate records justifies piercing the corporate veil." *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1521 (3d Cir. 1994).

Third, Plaintiff failed to allege or to present evidence demonstrating that there was a "*substantial* intermingling of corporate and personal affairs." *Mortimer*, 255 A.3d at 278 (internal quotations and citation omitted) (emphasis added). Plaintiff did not allege that Chaim Gross signed the Agreement between Plaintiff, FellowShip, and Milliard Enterprises that is now in dispute. *See* ECF No. 78 ¶ 21; *see also Juarez v. Jeune Invs., LLC*, No. 2256 EDA 2024, 2025 WL 2631623, at *11 (Pa. Super. Ct. Sept. 12, 2025) (finding veil piercing was warranted against an individual in part because he "consistently" did not "maintain separation between the LLC and [himself] as [an] individual[]" and signed agreements "individually and without referencing" the LLC or his "role[] within the LLC"). Moreover, Plaintiff did not point to any evidence showing that Chaim Gross siphoned or diverted funds from FellowShip or Milliard Enterprises for his personal benefit, loaned personal funds to these entities, or substantially intermingled his personal assets and bank accounts with theirs. *See Carmen Enter., Inc.*, 2025 WL 46741, at *5 ("[W]henever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded." (internal quotations and citation omitted)). In its Opposition, Plaintiff notes that it "recently received over 3,400 pages of bank records showing that funds were transferred from Lakewood [Candies'] account to Mr. Gross personally, as well as to 'Chaim Gross & Shani.'" ECF No. 123 at 24–25.[9] But those bank records are not before the Court, and Plaintiff does not contend that there are any records showing a transfer from *FellowShip* and *Milliard Enterprises* to Chaim Gross, such that he was "us[ing] the assets of [these LLCs] as if they were his own." *Carmen Enter., Inc.*, 2025 WL 46741, at *6 (internal quotations and citation omitted).

---

[9] The "subpoenaed bank records" that Plaintiff references in its Opposition briefs, *see* ECF No. 136 at 15; ECF No. 123 at 24, have been the subject of motions to quash. *See* ECF Nos. 122, 142, 144.

Finally, Plaintiff alleged that Chaim Gross "engaged in corporate wrongdoing by using intentionally deceptively similar names for multiple corporate entities" to sow confusion with third parties. ECF No. 78 ¶ 87. According to Plaintiff, this "confusion was deliberate, intentional, and wrongful[,]" and was done "to avoid . . . contractual obligations and defraud creditors." *Id.* ¶ 88; *see also id.* ¶ 98 ("Chaim Gross transferred FellowShip's and Milliard[] [Enterprises'] assets through a series of shell companies . . . to avoid obligations to Plaintiff and other creditors"). There are thus some facts suggesting that Chaim Gross was "misusing the corporate form," but those facts are likewise not supported by evidence. *Mortimer*, 255 A.3d at 278.

On balance and "tread[ing] lightly[,]" *see id.*, a consideration of the *Mortimer* factors articulated above does not lead the Court to the conclusion that there was "such unity of interest and ownership that the separate personalities of" FellowShip, Milliard Enterprises, and Chaim Gross "no longer exist." *Id.* at 286–87 (internal quotations and citation omitted). The Court finds that piercing the corporate veil for the sake of establishing personal jurisdiction over Chaim Gross through an alter ego theory is not warranted under these circumstances.

#### 5. *Single Enterprise Theory*

Finally, in its FAC, Plaintiff asserted a single enterprise theory against FoamTex as a purported basis for exercising personal jurisdiction. *See* ECF No. 78 ¶ 16.[10] However, in its Opposition, Plaintiff failed to develop an argument as to how the Court can exercise personal

[10] Plaintiff also alleged that this Court can exercise personal jurisdiction over Chaim Gross, Shani Gross, and Simcha Newmark under a single enterprise theory. *See* ECF No. 78 ¶ 17. However, in its Opposition briefs, Plaintiff did not argue that the single enterprise theory applies to Chaim and Shani Gross, or to Simcha Newmark as a basis to assert personal jurisdiction, so it has abandoned its single enterprise theory as to those Defendants for jurisdictional purposes. *See Dreibelbis*, 274 F. App'x at 185; *see also* ECF No. 145 at 18 ("Plaintiff does not seek to hold Mr. Newmark liable for FellowShip's or Milliard[] [Enterprises'] breach of the Agreement under a veil-piercing or single-enterprise theory").

jurisdiction over an out-of-state defendant pursuant to this theory. Instead, Plaintiff mentions only in passing that FoamTex, FellowShip, and Milliard Enterprises "are operated as a single enterprise" in connection with its arguments regarding the closely related parties doctrine. *See* ECF No. 123 at 16. Elsewhere in its briefing, Plaintiff contends that "FoamTex is liable under a theory of single enterprise liability" and discusses that theory of *liability* in more detail in connection with Defendants' Rule 12(b)(6) Motions to Dismiss for failure to state a claim. *See id.* at 21–23; *see also id.* at 3 ("The breach of contract claim is plausibly alleged against FoamTex and Mr. Gross under a theory of single enterprise liability"); *id.* at 12 ("It also alleges that Lakewood Candies, FoamTex, and Chaim Gross are liable for the actions of Fellow[S]hip and Milliard under a theory of single enterprise liability."); *id.* at 23 ("[T]he FAC adequately establishes that FoamTex is liable on a single enterprise theory").

Accordingly, because Plaintiff has not presented any authority or argument as to how this Court can exercise personal jurisdiction over FoamTex based on a single enterprise theory, the Court finds that Plaintiff has forfeited that theory to the extent it was asserted as a basis for personal jurisdiction. *See DLJ Mortg. Cap., Inc.*, 167 F.4th at 635 ("[W]hen a litigant raises an argument 'in passing (such as, in a footnote)' but fails to 'squarely argue[]' it, we consider it a forfeiture" (quoting *Kalu v. Spaulding*, 113 F.4th 311, 344 n.21 (3d Cir. 2024))).

* * *

In sum, Plaintiff failed to sufficiently demonstrate that this Court can exercise personal jurisdiction over Defendants Chaim Gross, Shani Gross, FoamTex, and Simcha Newmark consistent with the Due Process Clause. Therefore, the Court will grant Chaim Gross', Shani Gross', FoamTex's, and Simcha Newmark's Motions to Dismiss for lack of personal jurisdiction

(ECF Nos. 109, 110, 111, 132), and will dismiss the claims asserted against Chaim Gross, Shani Gross, FoamTex, and Simcha Newmark without prejudice.[11]

If Plaintiff still seeks to pursue claims against these individuals and corporate entity, Plaintiff may do so in a court that has jurisdiction over them. However, leave to amend will not be granted. Given the unusual posture of this case, Plaintiff had a significant amount of discovery available to it at the time that it amended its Complaint, some of which may have pertained to jurisdiction. Moreover, Plaintiff has not argued that Chaim Gross, Shani Gross, Simcha Newmark, or FoamTex are necessary parties to this litigation. Under the circumstances of this case, the Court finds that leave to amend would be "futile," as Plaintiff has not provided the Court with any indication that the jurisdictional deficiencies discussed at length are curable by an additional round of amendment. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (explaining that amendment of a complaint is futile when it "will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss"); *United Emp. Assocs.*, 2024 WL 4988982, at *13 (finding that leave to amend the claims asserted against a defendant "would be futile" where the court "lack[ed] personal jurisdiction over" that defendant).

---

[11] Because the Court is granting Chaim Gross', Shani Gross', and FoamTex's Rule 12(b)(2) Motions to Dismiss, the Court need not address these Defendants' Rule 12(b)(3) and Rule 12(b)(6) Motions. Similarly, because the Court is granting Simcha Newmark's Rule 12(b)(2) Motion to Dismiss, the Court need not address Newmark's Rule 12(b)(3), Rule 12(b)(5), and Rule 12(b)(6) Motions.

In two sentences of its Opposition to Simcha Newmark's Motion to Dismiss, Plaintiff requested "limited jurisdictional discovery." *See* ECF No. 145 at 4, 19. But Plaintiff did not provide *any* argument as to why jurisdictional discovery is warranted and whether the relevant standard for granting jurisdictional discovery has been satisfied. *See, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Accordingly, the Court will not order jurisdictional discovery as to Simcha Newmark under these circumstances.

Defendants SmartShipped, Samuel Greenwald, and Yaakov Landsman did not move to dismiss Plaintiff's FAC for lack of personal jurisdiction. *See* ECF No. 115. Under Rule 12(h)(1), they have thus waived the defense of lack of personal jurisdiction, so the Court will proceed to consider their Motions to Dismiss for failure to state a claim. *See* Fed R. Civ. P. 12(h)(1); *see also Burger King Corp.*, 471 U.S. at 472 n.14 (explaining that personal jurisdiction "is a waivable right").

**B. Merits: Count III**

Defendants SmartShipped, Samuel Greenwald, and Yaakov Landsman filed Motions to Dismiss pursuant to Rule 12(b)(6). Plaintiff did not assert Counts I or II against these three Defendants, so the Court begins its analysis with Count III, an alleged violation of the PUVTA. Although Plaintiff initially asserted Count III against all Defendants, *see* ECF No. 78 ¶¶ 96–102, Plaintiff now states that it is "voluntarily withdraw[ing] Count III" against both Samuel Greenwald and Yaakov Landsman without prejudice. ECF No. 136 at 4, 16. The Court will thus dismiss Count III against Greenwald and Landsman without prejudice, and need only evaluate whether Plaintiff stated a plausible claim for a violation of the PUVTA against SmartShipped.

The PUVTA provides that "a transfer made or obligation incurred by a debtor is voidable as to a creditor" when certain conditions are met. 12 Pa. Cons. Stat. § 5104. The statute contains different provisions regarding liability for a fraudulent transfer depending on whether a plaintiff is asserting an actual or constructive fraud theory. *Id.* § 5104(a)(1)–(2).

With respect to actual fraud, in order to void a transfer under Section 5104(a)(1), a plaintiff must allege facts demonstrating that "the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor." *Id.* § 5104(a)(1). On occasion, a plaintiff may present direct evidence of a debtor's "'actual intent to hinder, delay or

defraud'" a creditor. *Eddystone Rail Co., LLC v. Bridger Logistics, LLC*, No. 17-cv-00495, 2024 WL 3090882, at *36 (E.D. Pa. June 21, 2024) (quoting 12 Pa. Cons. Stat. § 5104(a)(1)), *appeal dismissed*, Nos. 24-2239 & 24-2284, 2025 WL 2048326 (3d Cir. Jan. 22, 2025). "[I]n the absence of direct evidence," the PUVTA identifies various factors or "badges of fraud" a plaintiff may rely on as circumstantial evidence in supporting an actual fraud claim. *Id.* For example, some of the badges of fraud include considerations of whether: "the transfer or obligation was to an insider;" "the debtor retained possession or control of the property transferred after the transfer;" or "the transfer or obligation was disclosed or concealed." 12 Pa. Cons. Stat. § 5104(b)(1)–(3). The list of factors enumerated in § 5104(b) is not exhaustive, nor is any one combination sufficient to establish actual fraud. *See Chestnut St. Consol., LLC v. Dawara*, 619 F. Supp. 3d 489, 506–07 (E.D. Pa. 2022) ("No particular badge is necessary, nor is any combination sufficient; finding intent is always fact specific." (internal quotations and citation omitted)); *cf. In re C.F. Foods, L.P.*, 280 B.R. 103, 109 (Bankr. E.D. Pa. 2002) ("The plain language of § 5104(b) clearly provides that other factors, beyond those listed, can be considered in determining whether a transfer was made with actual intent to defraud. Therefore, even in the absence of any of the enumerated badges, a court can find actual fraud.").

With respect to constructive fraud, in order to void a transfer under Section 5104(a)(2), a plaintiff must allege facts demonstrating that "the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation." 12 Pa. Cons. Stat. § 5104(a)(2). In addition, a plaintiff is required to plead facts demonstrating the debtor either (1) "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or" (2) "intended to incur, or believed or reasonably should have believed

that the debtor would incur, debts beyond the debtor's ability to pay as they became due." *Id.* § 5104(a)(2)(i)–(ii).

Furthermore, the Superior Court of Pennsylvania has interpreted the PUVTA to "require[] the plaintiff to prove the 'transfer' of an 'asset' to establish that any statutory relief applies." *TD Bank, N.A. v. Andreasyan*, No. 1722 EDA 2023, 2024 WL 4297802, at *5 (Pa. Super. Ct. Sept. 26, 2024). The statute defines an "[a]sset" as the "[p]roperty of a debtor[,]" and defines "[t]ransfer" as "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset[,]" including "payment of money, release, lease, license and creation of a lien or other encumbrance." 12 Pa. Cons. Stat. § 5101(b).

While a plaintiff is required to adhere to a heightened standard of pleading under Federal Rule of Civil Procedure 9(b) in alleging actual fraud, caselaw suggests that the heightened pleading standard in Rule 9(b) is inapplicable to causes of action alleging constructive fraudulent transfer. *See, e.g.*, *Agri-Mktg., Inc. v. ProTerra Sols., LLC*, No. 17-cv-00627, 2018 WL 1444167, at *9 (E.D. Pa. Mar. 22, 2018) (finding that actual fraud is "analyzed under Rule 9(b), whereas [constructive fraud] is required only to meet the demands of Rule 8"); *In re Forks Specialty Metals Inc.*, Bankr. No. 17-18061, Adversary No. 19-00028, 2023 WL 3239468, at *20–22 (Bankr. E.D. Pa. Apr. 30, 2023) ("Claims of actual fraud are evaluated under Federal Rule of Civil Procedure 9(b) . . . [whereas] [c]laims asserting a constructively fraudulent transfer must meet the more relaxed plausibility pleading standard of Federal Rule of Civil Procedure 8(a)."); *7301 Penn Ave., LLC v. ChemImage Corp.*, No. 23-cv-1836, 2024 WL 4349199, at *1 (W.D. Pa. Sept. 30, 2024) (same).

With this framework in mind, the Court turns to the allegations against SmartShipped. Although Plaintiff did not specify in its FAC which statutory provision it was proceeding under, it

appears to have alleged both actual and constructive fraud theories, *see* ECF No. 78 ¶¶ 99–100, and the parties made arguments concerning both in their briefing.

### *1. Plaintiff Failed to State a PUVTA Claim Against SmartShipped*

In support of its PUVTA claim, Plaintiff alleged that it "has a right to payment from FellowShip and/or Milliard [Enterprises]," but has not been paid in full yet. *Id.* ¶ 97. Nevertheless, "[w]ithout Plaintiff's knowledge or consent, Chaim Gross transferred FellowShip's and Milliard[] [Enterprises'] assets through a series of shell companies, such as Lakewood [Candies], FoamTex, and SmartShipped, owned and controlled by Mr. Gross and/or other individual Defendants in order to avoid obligations to Plaintiff and other creditors." *Id.* ¶ 98. Plaintiff further alleged that those transfers "were made without benefit or valuable consideration to FellowShip or Milliard [Enterprises]" and, as a result, both "FellowShip and Milliard [Enterprises] have become insolvent." *Id.* ¶¶ 99, 101. In making these transfers, "Mr. Gross and the other Defendants acted with the intent to hide assets, hinder recovery, or move such assets beyond the reach of Plaintiff or other creditors[,]" resulting in a violation of the PUVTA. *Id.* ¶ 100.

In addition, in its Opposition, Plaintiff argues that it "allege[d] a claim for actual fraudulent transfer against SmartShipped" by means of its "allegations that Fellow[S]hip's clients, business, and software product were transferred to SmartShipped." ECF No. 136 at 13 (citing ECF No. 78 ¶¶ 70–72). Plaintiff also points the Court to allegations that purportedly correspond to various badges of fraud enumerated in Section 5104(b). *Id.* at 14.

As discussed above, in order for Plaintiff to plead a violation of the PUVTA, Plaintiff needed to identify a purported "'transfer' of an 'asset.'" *TD Bank, N.A.*, 2024 WL 4297802, at *5. Upon a close review of Plaintiff's FAC, the only substantive factual allegation of a "transfer" involving SmartShipped is the allegation that "clients of FellowShip were transferred over to

SmartShipped, who is now servicing them." ECF No. 78 ¶ 70. Pennsylvania courts have recognized a property interest in proprietary client lists and other client-related information. *See, e.g.*, *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 107 (3d Cir. 2001) ("'[C]ustomer lists and customer information . . . [are] highly confidential and constitute[] a valuable asset. Such data has been held to be property in the nature of a "trade secret" for which an employer is entitled to protection, independent of a non-disclosure contract.'" (quoting *Robinson Elec. Supervisory Co. v. Johnson*, 154 A.2d 494, 496 (Pa. 1959))); *McCarthy & Co., Inc. v. Pollen*, Nos. 2254 EDA 2023 & 943 EDA 2024, 2025 WL 1743726, at *2 (Pa. Super. Ct. June 24, 2025) (describing "confidential and proprietary information" as "including client lists, client contracts, client tax returns, [and] client financial statements"), *appeal granted*, 353 A.3d 180 (Pa. 2026) (per curiam). But this has not been extended to viewing clients themselves as something that a business can have a property interest in, nor did Plaintiff identify any cases in which Pennsylvania courts have held that clients can be considered "assets." Plaintiff did not otherwise allege in its FAC that client lists or other proprietary information about FellowShip's clients were transferred to SmartShipped. Therefore, Plaintiff's allegation that "clients of FellowShip were transferred over to SmartShipped" cannot sustain a claim for a violation of the PUVTA against SmartShipped. ECF No. 78 ¶ 70.

As to other allegations involving SmartShipped, none suffice to support a purported violation of the PUVTA. Plaintiff alleged that SmartShipped "provides the same or very similar services to those FellowShip provided[,]" some employees worked for both companies, "FoamTex acquired" FellowShip's software product, ScanShip, "without any compensation," and "SmartShipped now offers that software to customers." *Id.* ¶¶ 71, 72. These allegations do not contain any mention of a "transfer" of FellowShip's software to SmartShipped, such as a "payment

of money, release, lease, license and creation of a lien or other encumbrance" in exchange for the software. 12 Pa. Cons. Stat. § 5101(b). And the fact that "SmartShipped now offers" ScanShip to its customers is, on its own, insufficient to show that the software was transferred to SmartShipped. ECF No. 78 ¶ 72; *see also TD Bank, N.A.*, 2024 WL 4297802, at *5 ("[T]o be eligible for relief under section 5104, a plaintiff must first establish that there was a 'transfer' of an 'asset' that applies." (quoting 12 Pa. Cons. Stat. § 5104)). By contrast, Plaintiff expressly alleged that "Lakewood Candies owned the rights to a software product, ScanShip, which it decided to give to FellowShip free of charge" and that "Fellow[S]hip then in turn granted a 'perpetual license' to FoamTex to access and use the software without paying anything of value to Lakewood Candies." ECF No. 78 ¶ 51; *see also id.* ¶ 72 (alleging that "FoamTex acquired ownership of FellowShip's software product, ScanShip, without any compensation"). Here, Plaintiff failed to allege that any transfer of software to SmartShipped actually took place, and did not allege any facts regarding that transfer, including when or how it occurred. Therefore, the allegations about FellowShip's software cannot support a claim against SmartShipped for a purported violation of the PUVTA.

Next, Plaintiff's generalized allegations that "the transfer of Defendants' business and assets to FoamTex and SmartShipped has left the other entity defendants insolvent" are also insufficient to state a claim. *Id.* ¶ 73; *see also id.* ¶ 74 ("Upon information and belief, SmartShipped and the other entity Defendants did not properly document transactions between each other or compensate each other for services provided or assets transferred amongst each other."); *id.* ¶ 98 ("Chaim Gross transferred FellowShip's and Milliard[] [Enterprises'] assets through a series of shell companies, such as Lakewood, FoamTex, and SmartShipped, owned and controlled by Mr. Gross and/or other individual Defendants in order to avoid obligations to

Plaintiff and other creditors."); *id.* ¶ 104 (same). These conclusory allegations are devoid of facts demonstrating any actual transfer of a specific asset to SmartShipped occurred.

For these reasons, Plaintiff has failed to plead adequate facts establishing that an asset was transferred to SmartShipped within the meaning of the PUVTA. Accordingly, Plaintiff has not stated a plausible PUVTA claim against SmartShipped, and the Court will dismiss Count III against SmartShipped.

Plaintiff requested leave to amend on the basis that it can "supply further facts once it fully analyzes Defendants' subpoenaed bank records." ECF No. 136 at 15. "That argument, of course, puts the cart before the horse." *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 137 (3d Cir. 2014). Plaintiff "may not attempt to use discovery as a fishing expedition to determine" whether a transfer of an asset occurred and "to seek out the facts necessary to establish a legally adequate complaint." *White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. 2013). Indeed, the Third Circuit has cautioned against providing plaintiffs with an "opportunity 'to conduct a fishing expedition in order to find a cause of action.'" *Levey*, 590 F. App'x at 137 (quoting *Ranke v. Sanofi-Sythelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006)); *see also Twombly*, 550 U.S. at 556 (requiring a plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of its claims); *Iqbal*, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); *Bergin v. Teamsters Loc. Union No. 77*, No. 10-cv-2289, 2011 WL 486230, at *2 (E.D. Pa. Feb. 4, 2011) ("'[F]ishing expeditions' to seek out the facts needed to bring a legally sufficient complaint are barred by the pleading clarifications in *Iqbal* and *Twombly*."). This is why motions to dismiss are generally resolved before any discovery begins in a case. *Levey*, 590 F. App'x at 137. However, given the unique procedural posture of the case, there has already been substantial discovery into

FellowShip's documents. Yet despite the extensive record that Plaintiff had at its fingertips, Plaintiff failed to state a plausible PUVTA claim against SmartShipped, even though Plaintiff's claim was centered around conclusory allegations that FellowShip's assets were transferred to SmartShipped. Under the circumstances of this case, the Court finds that amendment of Count III as to SmartShipped would be "futile." *Grayson*, 293 F.3d at 108. Accordingly, the Court will deny leave to amend and will dismiss Count III against SmartShipped with prejudice.

**C. Merits: Count IV**

Finally, the Court turns to Defendants SmartShipped's, Samuel Greenwald's, and Yaakov Landsman's Motions to Dismiss Count IV pursuant to Rule 12(b)(6). Plaintiff initially asserted a cause of action for "Aiding and Abetting" against all Defendants, *see* ECF No. 78 ¶¶ 103–06, but has subsequently withdrawn Count IV against Defendants FellowShip, Milliard Enterprises, Lakewood Candies, FoamTex, and Chaim Gross. *See* ECF No. 94 at 3, 26; ECF No. 123 at 26. Plaintiff maintains its assertion of Count IV against Defendants SmartShipped, Samuel Greenwald, and Yaakov Landsman.

In its FAC, Plaintiff only identified Count IV as an "Aiding and Abetting" claim without specifying what the underlying tort that Defendants are alleged to have aided and abetted is. The Court thus turns to the allegations themselves to shed light on this claim. As to Count IV, Plaintiff alleged that "Chaim Gross transferred FellowShip's and Milliard[] [Enterprises'] assets through a series of shell companies." ECF No. 78 ¶ 104. Plaintiff further alleged that "all" Defendants "knew of Mr. Gross's purpose in transferring such assets away . . . and through receipt of these assets, Defendants assisted, benefitted, and encouraged Mr. Gross's fraud and fraudulent transfer." *Id.* ¶ 105. Accordingly, Plaintiff appears to have alleged a claim for aiding and abetting a

fraudulent transfer. In other words, Plaintiff's aiding and abetting claim is tied to the conduct underlying Plaintiff's PUVTA claim.

That is problematic for Plaintiff because several Defendants point out that "no Pennsylvania court has recognized aiding and abetting a PUVTA violation, and the statute's closed remedial scheme forecloses it." ECF No. 109-1 at 19 (citing 12 Pa. Cons. Stat. §§ 5107, 5108(b)); *see also* ECF No. 110-1 at 13 (same); ECF No. 111-1 at 19 (same); ECF No. 132-1 at 17 (same). Moreover, courts in several other states have found that liability for aiding and abetting a fraudulent transfer is precluded by similar fraudulent transfer statutes. *See, e.g.*, *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 89 (3d Cir. 2018) (noting that "[t]he Chancery Court has foreclosed the possibility of aiding and abetting liability under" the Delaware Uniform Fraudulent Transfer Act ("DUFTA") (citing *Edgewater Growth Cap. Partners, L.P. v. H.I.G. Cap., Inc.*, No. 3601-VCS, 2010 WL 720150, at *2 (Del. Ch. Mar. 3, 2010))); *In re Rescue Rangers, LLC*, 756 B.R. 521, 531 (Bankr. E.D. Va. 2017) (noting that a cause of action for "aiding and abetting fraudulent transfers" does "not exist under federal or Virginia law"); *GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 643 (E.D. Ky. 2012) ("[T]he Court believes that Kentucky would follow the overwhelming majority of states that hold [a] cause of action [for aiding and abetting fraudulent conveyances] does not exist."); *Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 918 (D. Ariz. 2007) (predicting that the Arizona Supreme Court would not adopt an "independent cause of action for aiding and abetting a fraudulent transfer under" the Arizona Uniform Fraudulent Transfer Act); *Freeman v. First Union Nat'l Bank*, 865 So.2d 1272, 1276 (Fla. 2004) ("There simply is no language in [the Florida Uniform Fraudulent Transfer Act] that suggests the creation of a distinct cause of action for aiding-abetting claims against non-transferees.").

Notably, Plaintiff did not contest this particular argument in its Opposition briefs, and failed to provide the Court with any clear authority indicating that Pennsylvania already recognizes or would recognize a cause of action for aiding and abetting a fraudulent transfer. Therefore, the Court finds that Plaintiff has effectively abandoned any cause of action for aiding and abetting a fraudulent transfer. *See Dreibelbis*, 274 F. App'x at 185 (affirming a district court's finding that a plaintiff had waived an argument where plaintiff "had ample opportunity to make this argument in response to defendants' motion to dismiss and failed to do so"); *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) ("This Court has previously treated a plaintiff's failure to address a defendant's arguments for dismissal as an abandonment." (collecting cases)); *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

In its Opposition briefs, in an attempt to salvage this cause of action, Plaintiff instead decided to recharacterize Count IV as an "aiding and abetting fraud" claim. *See* ECF No. 123 at 25; ECF No. 136 at 16; ECF No. 145 at 17. Aiding and abetting fraud is recognized as a cause of action under Pennsylvania law and requires a plaintiff to plead three elements: (1) underlying fraud committed by a third party; (2) "actual knowledge of the underlying fraud[;]" and (3) "substantial assistance or encouragement to the primary actor." *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 87, 89 (Pa. 2023); *see also Downz v. Citizens Bank, N.A.*, No. 24-cv-1529, 2024 WL 4829719, at *5 (E.D. Pa. Nov. 19, 2024) (listing the same elements and applying "a heightened pleading standard" under Rule 9(b) to a claim for aiding and abetting fraud). "[C]onclusory allegations of knowledge" are insufficient to state a claim for relief for aiding and abetting fraud. *Van Horn, Metz & Co., Inc. v. JP Morgan Chase & Co.*, No. 25-1838, 2026 WL 1103447, at *1 (3d Cir. Apr.

23, 2026); *see also Marion*, 288 A.3d at 91 (explaining that the actual knowledge standard "is not easily satisfied" as it acts to "deter overreaching lawsuits and forestall improper findings of liability in the absence of blameworthy conduct"). But as explained above, that is not the claim that Plaintiff pleaded in its FAC; the allegations that make up the heart of Plaintiff's aiding and abetting claim relate instead to a "fraudulent transfer." ECF No. 78 ¶ 105; *see also id.* ¶ 104. Plaintiff cannot amend its complaint through an opposition brief in an attempt to save a cause of action that was not properly pleaded. *See Commonwealth of Pa. ex rel. Zimmerman*, 836 F.2d at 181; *see also Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 179 n.23 (3d Cir. 2021) (finding that additional claims raised by a plaintiff in opposition to an order to show cause could not be considered because the plaintiff did not raise them in the complaint).

To be sure, Plaintiff alleged generally that Chaim Gross engaged in "fraud." ECF No. 78 ¶ 105; *see also id.* ¶ 87 ("Mr. Gross engaged in corporate wrongdoing"). However, that conclusory allegation standing alone does not come close to satisfying Rule 9(b)'s requirement that claims sounding in fraud be pleaded "with particularity." *See* Fed. R. Civ. P. 9(b); *see also Burns v. Stratos*, No. 22-1319, 2023 WL 4014474, at *2 n.3 (3d Cir. June 15, 2023) (explaining that a plaintiff "must satisfy the heightened pleading standards" of Rule 9(b) for any "claims that sound in fraud" (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007))); *Artesanias Hacienda Real S.A. de C.V. v. North Mill Cap. LLC*, No. 16-cv-4197, 2021 WL 12315467, at *1 n.1 (E.D. Pa. Aug. 19, 2021) ("Rule 9(b)'s heightened pleading requirements apply to claims of aiding and abetting fraud."). Courts have interpreted Rule 9(b) as requiring a plaintiff to "plead or allege the date, time[,] and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. The factual allegations in the FAC do not adequately establish the elements of an underlying common law fraud claim

consistent with Rule 9(b)'s requirements. For example, there are no facts regarding a material "misrepresentation" or of justifiable reliance by Plaintiff upon a misrepresentation. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022) (listing the elements of a common law fraud claim under Pennsylvania law).

In any event, setting aside whether Plaintiff adequately pleaded that an underlying fraud was committed, there are plainly insufficient facts in the FAC to demonstrate the second and third elements of an aiding and abetting fraud claim—that is, actual knowledge and substantial assistance by SmartShipped, Greenwald, and Landsman. Rather, Plaintiff's FAC contains only a "[t]hreadbare recital[]" of those elements, which is insufficient to demonstrate a plausible entitlement to relief. *Iqbal,* 556 U.S. at 678; *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) ("[W]e disregard . . . recitals of the elements of a cause of action, supported by mere conclusory statements." (internal quotations and citation omitted)).

For example, Plaintiff makes the conclusory assertion that "all" Defendants "knew of Mr. Gross's purpose in transferring such assets away from FellowShip and Milliard [Enterprises] and into companies owned or operated by Defendants, and through receipt of these assets, Defendants assisted, benefitted, and encouraged Mr. Gross's fraud and fraudulent transfer." ECF No. 78 ¶ 105. The FAC does not otherwise contain any factual allegations demonstrating that SmartShipped, Samuel Greenwald, and Yaakov Landsman had actual knowledge of a fraudulent transfer or provided substantial assistance to accomplish it. Indeed, Greenwald's and/or Landsman's names appear in just seven paragraphs of Plaintiff's 106-paragraph FAC. *See id.* ¶¶ 8, 17, 26, 43, 64, 67–68. The only connection made between Greenwald and Landsman, and an alleged fraudulent transfer of assets from FellowShip to SmartShipped is the fact that they are members of SmartShipped and previously worked for Milliard Enterprises and/or Lakewood

Candies. *See id.* ¶¶ 8, 64, 73. There are otherwise no facts that allow the Court to reasonably infer that they had actual knowledge of a fraudulent transfer or substantially assisted in it under the heightened pleading standard that applies here. *See Van Horn, Metz & Co., Inc.*, 2026 WL 1103447, at *1 ("conclusory allegations of knowledge" are insufficient); *Downz*, 2024 WL 4829719, at *5 (finding that a plaintiff had sufficiently pleaded actual knowledge of a fraudulent scheme involving plaintiff's bank account where the plaintiff alleged that the defendant-bank had previously flagged "unauthorized fraudulent deposits into [p]laintiff's checking account").

As a last resort, Plaintiff argues that Rule 9(b) provides that "knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b). However, that does not mean that Plaintiff can ignore Rule 9(b)'s requirement that claims involving fraud be "substantiat[ed]." *Frederico*, 507 F.3d at 200. Here, Plaintiff has not satisfied that standard. Instead, Plaintiff merely speculates and asks the Court to make a series of inferences from general allegations of ownership and employment in prior companies, and the timing of when SmartShipped was formed—i.e., after Plaintiff's original complaint was filed. *See* ECF No. 78 ¶¶ 64, 67–68. Accepting Plaintiff's position would not comport with the applicable pleading standards, and, in any event, is no excuse with respect to the absence of facts demonstrating substantial assistance.

Accordingly, the Court will grant SmartShipped's, Greenwald's, and Landsman's Motion to Dismiss Count IV for failure to state a claim. The Court will dismiss Count IV against SmartShipped, Greenwald, and Landsman with prejudice because Plaintiff appears to have pleaded a legally defective claim. As discussed above, *see supra* at 55–57, Plaintiff has not adequately demonstrated that a claim for aiding and abetting a fraudulent transfer is a cognizable cause of action under Pennsylvania law, and has effectively abandoned any such cause of action. Nor has Plaintiff given the Court any indication that it can cure the deficiencies identified above.

Therefore, permitting Plaintiff leave to amend the FAC would be "futile." *Grayson*, 293 F.3d at 108; *see also Jablonski*, 863 F.2d at 292 (explaining that amendment of a complaint is futile when it "will not cure the deficiency in the original complaint").

## IV. CONCLUSION

For the foregoing reasons, the Court decides the pending Motions to Dismiss as follows. The Court will grant Chaim Gross', Shani Gross', FoamTex's, and Simcha Newmark's Motions to Dismiss for lack of personal jurisdiction (ECF Nos. 109, 110, 111, 132), and will dismiss all claims asserted against them without prejudice to Plaintiff refiling those claims in a court that can exercise personal jurisdiction over them. The Court will grant SmartShipped's, Samuel Greenwald's, and Yaakov Landsman's Motion to Dismiss for failure to state a claim (ECF No. 115), and dismiss the claims asserted against them in the FAC: Count III is dismissed without prejudice against Samuel Greenwald and Yaakov Landsman in light of Plaintiff's voluntary withdrawal of the claim; Count III is dismissed with prejudice against SmartShipped; and Count IV is dismissed with prejudice against SmartShipped, Samuel Greenwald, and Yaakov Landsman. Finally, the Court will deny leave to amend as futile. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**